**Gail S. HEUCKER, Commissioner Department of Economic Security, Appellant,**

v.

**Robert L. CLIFTON et al., Appellees.**

Court of Appeals of Kentucky.

Oct. 12, 1973.

Paul E. Tierney, Forest Smith, Frankfort, for appellant.

Paul F. Fauri, Prestonsburg, for appellees.

STEINFELD, Justice.

This is an appeal by the Commissioner of the Commonwealth's Department of Economic Security from a judgment of the circuit court that set aside a decision of the department's appeal board. The court proceedings, which were brought pursuant to KRS 205.234, sought review of a decision of the board holding that the department had correctly processed appellees' application for public assistance for medical care. KRS 205.231.

The appellees, Robert and Maudie Clifton, are husband and wife and reside in Floyd County. Robert is 64 years old, is in poor health, and is under medical care for heart and lung conditions. Maudie is 68 years old, has a heart condition, arthritis, diabetes, high blood pressure, and is in need of a cataract operation. The Cliftons are under continuous treatment by local doctors and are regularly seeing specialists at the University of Kentucky Medical Center in Lexington, Kentucky, for out-patient treatment. Neither of them is able to seek or hold gainful employment.

The Cliftons' sole income has been and is from Social Security, from which they receive $172.80 a month. Their monthly living expenses (termed "maintenance" by applicable federal and state statutes and regulations) total $106 per month. The items making up this total are rent $40, utilities $30, and food stamps $36. Additionally, they pay $48 per month for an automobile they use to commute to Lexington for medical care and $12 per month

for a telephone which was installed at the direction of a physician. After these expenses are deducted, their remaining monthly income is $6.80. Until February 1, 1972, the Cliftons received a medical assistance card at the beginning of each quarter of the year, but on that date the department declared their income to be in excess of their basic maintenance needs and they were classified "excess income medically needy." The effect of this declaration, which was made pursuant to the Public Assistance Manual, Sec. 5214, was to deny them their medical assistance card *until* they spend out of their own funds in each respective quarter approximately $23 for qualified items. It seems conceded that the bona fide needs of the Cliftons in each quarter of the year for maintenance and medical help exceed their income by more than $23. After making these expenditures they receive a medical assistance card.

This proceeding requires the interpretation of 45 CFR 248.21(a)(3)(ii); 42 U.S. C. § 1396a(a)(17), the Kentucky State Medical Plan, Section III, B(2); and Manual Sections 5214, 5360, 5363, 5366, 5369, 5371 and 5374, as they apply to computation of income and expenses relating to entitlement to state medical assistance. The controversy revolves around the point in time that a determination of the applicants' qualified income is made.

The Cliftons argue that the provisions of the Kentucky Public Assistance Manual of Operations, a publication of the Department of Economic Security that sets forth policy and procedures for determining eligibility for public assistance, caused the administrative employees of the department to erroneously determine that their income was in excess of their maintenance and medical needs. They claim that the provisions of the manual were contrary to the

federal acts and regulations governing the establishment and administration of the federally funded program.[1] Specifically, the Cliftons claim that there should have been deducted the costs of transportation to and from their essential medical facilities and the charges for their prescribed telephone and medication in computing their qualified income. The department does not contend that the subject expenses are unnecessary or unreasonable. The Cliftons allege that if these deductions were taken into consideration they would have been declared eligible for their medical assistance card at the beginning of each quarter rather than after they had expended their own funds. The circuit court directed the appellant "to provide for the appropriate deductions for medical expenses, i. e., transportation, prescription medication, and any other reasonable medical expenses which the Department may define, prior to making a final excess income determination for Petitioners." It is from that judgment that the Commissioner appeals. We affirm.

The department, following the provisions of its manual, contends that the transportation, telephone and drug expenses should not be considered in determining qualification until the claimants have actually incurred those obligations. The department's position necessarily delays the issuance of a medical assistance card to the Cliftons; therefore the Cliftons point out that they must pay from what has been determined erroneously to be "excess income" expenses which should be paid for them under this program.

Title 42, United States Code, Section 1396 (popularly known as the "Medicaid Act"), provides:

"For the purpose of enabling each State, as far as practicable under the

---

1. See King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968), Footnote 34, wherein it is stated, "There is of course no question that the Federal Government, unless barred by some controlling constitutional prohibition, may impose the terms and conditions upon which its money allotments to the states shall be disbursed, and that any state law or regulation inconsistent with such federal terms and conditions is to that extent invalid." (Citations omitted)

conditions in such State, to furnish (1) medical assistance on behalf of families with dependent children and of aged, blind, or permanently and totally disabled individuals, whose income and resources are insufficient to meet the cost of necessary medical services, and (2) rehabilitation and other services to help such families and individuals attain or retain capability for independence or self-care, there is hereby authorized to be appropriated for each fiscal year a sum sufficient to carry out the purposes of this subchapter. The sums made available under this section shall be used for making payments to States which have submitted, and had approved by the Secretary of Health, Education and Welfare, state plans for medical assistance."

The federal regulations define a "state plan" as:

" * * * a comprehensive statement submitted by the state agency describing the nature and scope of its program and giving assurance that it will be administered in conformity with the specific requirements stipulated in the pertinent title of the Act (the Social Security Act), the regulations in subtitle A and this chapter of this title, and other applicable official issuances of the department (Department of Health, Education and Welfare) * * *." 45 CFR Sec. 201.2.

Title 42, United States Code, Section 1396a(a)(17), provides that a state plan must:

" * * * include reasonable standards * * * for determining eligibility for and the extent of medical assistance under the plan which (A) are consistent with the objectives of this subchapter, (B) provide for taking into account only such income and resources as are, as determined in accordance with standards prescribed by the Secretary, available to the applicant or recipient * * * as would not be disregarded * * * in determining his eligibility for and amount of such aid or assistance under

such plan, (C) provide for reasonable evaluation of any such income or resources, and * * *."

Title 45, Code of Federal Regulations, Section 248.21(a)(3)(ii), declares that a state plan must:

"Provide that there will be a flexible measurement of available income which will be applied in the following order of priority:

(a) First, for maintenance, so that any income in an amount at or below the established level will be protected for maintenance;

(b) Next, income in excess of that needed for maintenance will be applied to costs incurred for medical insurance premiums and for necessary medical or remedial care recognized under State law and not encompassed within the State plan for medical assistance. States may set reasonable limits on such medical services for which excess income may be applied.

(c) All of the remaining excess income will be applied to costs of medical assistance included in the State plan."

The Kentucky State Medical Assistance Plan, Section III B(2), adopted pursuant to the above cited statutes and regulations, provides as follows:

"There will be a flexible measurement of available income which will be applied in the following order of priority:

a. First, for maintenance, so that any income in any amount at or below the established level will be protected for maintenance;

b. Next, income in excess of that needed for maintenance will be applied first to costs incurred for necessary medical or remedial care recognized under State law and not encompassed within the State Plan for medical assistance.

c. All of the remaining excess income will be applied to costs of medical assistance included in the State plan."

In accordance with the directive of the Kentucky Public Assistance Manual of Operations, the following procedure was used to determine that the Cliftons' $172.80 per month income was excessive: the "standard disregard" of $7.50 per person was deducted so that there remained $157.-80. The Cliftons had no deductible medical insurance premiums. The $157.80 figure was then compared with the manual's predetermined $150 monthly maintenance figure for a family of two. Then it was determined that the Cliftons' income was $7.80 per month above the maintenance figure; $7.80 was multiplied by three to arrive at $23.40, the minimum amount which they must spend for medical purposes in a calendar quarter before they become eligible for their card.

The sections of the manual which are of interest in this litigation are as follows:

"5214. Income Eligibility Scale. To determine the degree of responsibility the medical assistance program can accept for the medically needy, all available income is compared with the following income scale. In using the scale,

A. Family size is defined as: (1) applicant and spouse; * * *

B. Available income is defined as total net income, less applicable disregards, of members included in the 'family size'.

Income for Basic Maintenance Needs

| Size of Family | ANNUAL | MONTHLY |
|---|---|---|
| 1 | $1500 | $125 |
| 2 | $1800 | $150 |

(Other size families are provided for)

* * * * * *

If the total gross income does not exceed the figure in the scale for family size, the individual or family members for whom application was made are consid-

ered to be medically needy without determining net income or application of disregards. If there is an excess, the worker will:

* * * * * *

D. Round adjusted income to the nearest dollar.

E. Deduct any monthly costs for health insurance.

F. If remaining income exceeds the scale, procedures outlined in Sections 5360–5369 are applicable."

* * * * * *

"5360. Determination of Excess Income. After disregards in 5214 have been applied, if the monthly net income exceeds the scale for the applicable size family the worker will multiply the balance of the excess by three to determine the amount of income the applicant has available for medical needs for the quarter beginning with the first day of the month of application and ending three months later."

"5363. Use of Excess Income Prior to Reaching Entitlement Status.

If during the quarter the client reports that medical expenses, incurred during the quarter, have used all of the excess income, the worker will review with him his medical expenditures. If there is reason to doubt the accuracy of the client's listing of medical expenses, he may be requested to present receipts for bills paid or a written commitment from the vendor that the service was rendered, that it will be considered an obligation of the client and that the Medical Program will not be billed for the particular service.

If the client carries any form of medical insurance, specific inquiry must be made to determine what part of the expenses are covered by the insurance policy to assure that actual excess income was utilized. If it is established that the excess has been utilized for bona

fide medical expenses of the client and/or spouse or minor children, paid or obligated, as listed in Section 5366, an identification card is issued to provide entitlement to benefits beginning with the day on which the full excess was utilized to the first day of the next quarter."

\*　　\*　　\*　　\*　　\*　　\*

"5366. Recognized Medical Expenses for Which Excess Income May be Used. Expenses for any of the following medical services will be considered bona fide utilization of excess income:

B. Out-Patient hospital services, including diagnostic services, emergency room services, etc.

C. Laboratory and x-ray services.

\*　　\*　　\*　　\*　　\*　　\*

E. Intermediate Care Facility costs.

F. Any physicians' services.

\*　　\*　　\*　　\*　　\*　　\*

J. Clinic services.

\*　　\*　　\*　　\*　　\*　　\*

M. Prescribed drugs (only upon the prescription of a licensed physician, osteopath or dentist.)

\*　　\*　　\*　　\*　　\*　　\*

O. Eyeglasses and other aids to vision, prescribed by a physician skilled in diseases of the eye or by an optometrist.

P. Ambulance service when medically indicated, other transportation costs necessary to secure medical examinations or treatment."

Among its findings of fact and conclusions of law the trial court stated in part as follows:

"3. As part of their treatment, the Cliftons have been required to purchase medication and drugs on a continuous basis. In addition, they found it necessary to purchase an automobile to provide transportation to the University of Kentucky Medical Center in Lexington, and they have had to pay for the expenses of operating their vehicle both to and from the Medical Center. On doctor's orders, because of Mr. Clifton's heart condition, the Petitioners had a telephone installed in their home for the first time.

\*　　\*　　\*　　\*　　\*　　\*

"7. Pursuant to Title XIX of the Social Security Act, 42 U.S.C.A. § 1396(a)(17), its implementing regulations, 45 CFR 248.21(a)(3)(ii), and the Kentucky State Medical Plan, Petitioners are entitled to income deductions, prior to a final excess income determination, for the costs of all prescribed medications, medical transportation expenses, and any other medical expenses which the Respondent shall define, which accrued during the previous three-month eligibility period, and were not previously considered in determining eligibility, and/or any such medical expenses which can be predetermined for the ensuing eligibility period.

"8. Respondent has failed to allow Petitioners deductions for the cost of medication and drugs, and the cost of transportation prior to a final excess income determination in accordance with the Kentucky State Plan, the Social Security Act, and federal regulations.

"9. Petitioners' telephone, having been ordered by a physician, is a medical expense, but only the Department of Economic Security, by regulation, can make the determination as to whether telephone charges constitute a reasonable medical expense within the meaning of the Social Security Act and its implementing regulations which should be deducted prior to making an excess income determination.

Conclusion of Law

"1. In determining the Petitioners' income eligibility for regular medical assistance, the Respondent has violated the

Kentucky State Medical Plan, Title XIX of the Social Security Act, 42 U.S.C.A. § 1396(a)(17), and the implementing federal regulations, 45 CFR § 248.21(a)(3)(ii).

"2. Sections 5360 and 5214 of the Kentucky Public Assistance Manual of Operation are unreasonable and do not conform to the Kentucky State Medical Plan, the Social Security Act, and the implementing federal regulations, and the Respondent, by using these manual sections to determine income eligibility for medical assistance, violates the intent and purpose of the Social Security Act and the State Medical Plan."

■ The Commissioner argues that the court's judgment was erroneous because the Kentucky State Medical Plan was approved by the United States Department of Health, Education and Welfare. He has not directed our attention to any place in the record where the factual basis for this argument was presented in the lower court, therefore, we cannot consider it on appeal. Furthermore, there could be no merit in such an argument for it is the administration of the plan that we are presently concerned with and not the plan itself.

The Commissioner admits that in such cases as claimants confined in nursing homes, tuberculosis or mental hospitals, a special provision is made by Section 5369 of the manual. The anticipated charges for the care of those patients are deducted in computing income to determine whether there is "excess." Medical insurance premiums paid in advance also are deducted.

The Cliftons argue that the directions of the manual are contrary to that part of the Social Security Act, 42 U.S.C. Section 1396a(a)(17), which provides:

"A State plan for medical assistance must—

(17) include reasonable standards * * * for determining eligibility for and the extent of medical assistance under the plan which * * * (D) * * * provide for flexibility in the application of such standards with respect to income by taking into account, * * * the costs (whether in the form of insurance premiums or otherwise) incurred for medical care or for any other types of remedial care recognized under State law." [2]

■ We construe the foregoing federal enactments to require the state to follow a procedure by which fixed and measurable medical expenses, such as the Cliftons have, are to be deducted from their total income before a final determination is made of their eligibility for a medical assistance card.

■ Moreover, it appears to us that to use a different approach for the Cliftons from that followed with respect to the medically needy who pay health insurance premiums or those institutionally confined would result in impermissible discrimination. Just as was pointed out in Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct 1322, 22 L.Ed.2d 600 (1969), two classes of needy persons would be created: (1) those with insurance premiums to pay or hospital or nursing home expenses while confined therein, and (2) those in the circumstances similar to the Cliftons. Shapiro held that establishing two classes of welfare recipients " * * * create(d) a classification which constitute(d) an invidious discrimination denying them equal protection of the laws." The manner of administering the program contravenes the equal protection clause of the 14th Amendment of the United States Constitution.

---

**2.** The Senate Finance Committee Report No. 404 accompanying H.R. 6675, June 30, 1963, reads in part: "Thus before an individual is found ineligible for all or part of his medical needs, the state must be sure that the income of the individual has been measured in terms of both the state's allowance for basic maintenance needs and the cost of the medical care he requires."

The trial court adjudged other points which appear to us to have been unnecessary to a decision. They are presented in argument to this court, but we decline to consider them. To the extent indicated in this opinion, the judgment is affirmed. The trial court is directed to remand these proceedings to the appeal board of the Department of Economic Security for the entry of an order consistent herewith.

All concur.