Everett AKERS et al., Appellants,

v.

FLOYD COUNTY FISCAL COURT
et al., Appellees.

Supreme Court of Kentucky.

Sept. 16, 1977.

J. K. Wells, Wells, Porter & Schmitt, Paintsville, for appellants.

Jarvis Allen, James R. Allen, Prestonsburg, for appellees.

STERNBERG, Justice.

The Fiscal Court of Floyd County, Kentucky, adopted a resolution which divided the county into multi-cable television districts. It proposes to sell a 15-year franchise in each district for the exclusive right and privilege of operating a cable television station therein. The pertinent portions of the resolution read as follows:

"IN RE: RESOLUTION OF THE FISCAL COURT OF FLOYD COUNTY, KENTUCKY, AUTHORIZING THE DIVISION OF FLOYD COUNTY INTO COMMUNITY TELEVISION AREAS AND AUTHORIZING THE ADVERTISEMENT FOR BIDS ON COMMUNITY CABLE TELEVISION AREA FRANCHISES.

WHEREAS, there exists numerous Cable Television Systems, in Floyd County operated by various persons, furnishing signals, to the citizens of the County for a fee and;

WHEREAS, the Cable Television Systems must have a Franchise to operate in the future under the rules and regulations of the Federal Communications Commission and;

WHEREAS, there must be some standards and regulations imposed on the Operators of Community Television Systems for the protection of the consumer, and the prevention of monopolies and;

WHEREAS, the Fiscal Court has the duty and obligation to protect the welfare and convenience of the citizens of the County and has the authority to issue Franchises for the operation of Cable Television Systems and;

WHEREAS, the Operators of existing Community Cable Systems have expended great sums in creating their systems and in furnishing Cable Service to their customers and such Operators are entitled to some protection.

Be it therefore resolved:

(1) That Floyd County be divided into areas for Franchise purposes and for the purpose of preventing a monopoly, and that said areas be so set as to cover the entire County, each area containing a system or systems all under the same Operator.

(2) That these areas be advertised for bids on an area basis and that exclusive Franchises be awarded to the highest and best bidder, such best bidder to be selected by the Fiscal Court, taking into consideration the ability financially and educationally to operate such system and the moral character and fitness of such bidder.

\*　　\*　　\*　　\*　　\*　　\*

(4) The Franchise will be granted for a period of fifteen (15) years and the successful bidder will be required to meet the requirements of the Federal Communications Commission.

(5) In order to prevent a monopoly no owner or operator of a Community Television System will be allowed to bid on an area in which a system is operating, other than the one in which he is presently operating, nor shall any person bid for same on his behalf or with the intent of permitting him to operate same. Should there be two (2) operators in the same area, then the first operator who has given continual service shall be preferred in awarding Franchise if he meets all other qualifications.

Should an area be advertised for bids and no bids be received from the present operator or other qualified persons, then same shall be readvertised and other operators be allowed to bid on such area.

(6) Should a person other than the operator of a system in an area, become the successful bidder, then such successful bidder must purchase the existing system at a price to be determined by an appraisal arrived at by three (3) appraisers, one appointed by the owner and one appointed by the successful bidder and one by the Fiscal Court.

(7) The successful bidder shall furnish at least three (3) channels including ABC, CBS, NBC and a Kentucky Station if permitted by the Federal Communications Commission rules and regulations, and shall have exclusive rights to construct, maintain and operate Television Cables Systems upon and over County Highways or other public property of the County."

■ Prior to the division of the county into cable television districts, the appellants and appellees Herman Porter, Hubert Bartley, Bertha Cole, Fred Fraley, John Campbell, James E. Allen, Fred F. Bailey, Lowell Conley and Paul Gearheart each operated a cable television station in Floyd County, Kentucky. As laid out by the fiscal court, the districts are of such shapes and areas that the service of appellants would extend into more than one district. Appellants filed suit in the Floyd Circuit Court challenging the constitutionality of the resolution and they sought to enjoin the sale and issuance of the proposed franchises. The right of the fiscal court to adopt a resolution dividing the county into cable television districts is not challenged by any of the parties. Ky.Const. § 164; KRS 67.080; and *City of Owensboro v. Top Vision Cable Co. of Ky.*, Ky., 487 S.W.2d 283 (1972).

As lifted from appellants' brief, the issues are:

"1. May persons whose property rights will be invaded by enforcement of an unconstitutional ordinance, enjoin enforcement of the ordinance?

2. Is an ordinance constitutional if it, without police power justification, deprives a citizen of the right to earn a livelihood?

3. May police power be properly exercized to protect private enterprise against competition?

4. Is a classification in a franchising ordinance of those who can and those who cannot bid on the franchises, which excludes from bidding all cable operators in the county other than the one named in the ordinance, constitutionally permissible?

5. Is a provision of a CATV franchising ordinance which permits confiscation by the successful franchise bidder, of existing CATV cables in his franchise district at an arbitrated price, constitutional?"

May appellants enjoin the enforcement of an alleged unconstitutional resolution? CR 65.01 provides that injunctive relief may be granted under stated terms and conditions. In their complaint, appellants challenge the constitutionality of the resolution and further aver that they will suffer great and irreparable injury and have no adequate remedy at law. Pursuant to appellants' motion, a restraining order was issued ex parte. In due time appellees filed a motion to dissolve the restraining order. Appellants responded with a motion for a temporary injunction. After a hearing on these and other motions by the Honorable Reed D. Anderson, Special Judge designate, a temporary injunction was issued. Upon consideration of the case in chief, the trial judge dissolved the temporary injunction and dismissed the action.

In 42 Am.Jur.2d, Injunctions, it is stated as follows:

"§ 186. Generally.

An important branch of the law of injunctions is that dealing with applications for injunctive relief against the enforcement of statutes, ordinances, and administrative orders. The restraining order in such cases is directed, in effect, not against the execution of the particular statute or ordinance, but against the acts of the officials, the statute or ordinance notwithstanding, and the state's immunity from suit does not extend to such suits against public officers to enjoin them from threatened enforcement of invalid laws. However, in observance of the rule that courts will not, except under extraordinary circumstances, interfere with the duties of other departments of the government, equity will not ordinarily interfere with the action of public officers taken under statutory authorization. The power thus to arrest the hand of an officer as he is about to carry out the command of the legislature is to be exercised with a wisdom and discretion commensurate with its greatness; no trivial grounds will be sufficient to authorize the granting of such extraordinary relief."

"§ 187. Unconstitutionality or invalidity of statute or order.

The usual ground for asking injunctive relief against the enforcement of statutes is their invalidity. But invalidity, of itself, is not sufficient to warrant the exercise by equity of its extraordinary injunctive power. In other words, the mere fact that a statute is alleged to be unconstitutional or invalid will not entitle a party to have its enforcement enjoined. Further circumstances must appear which bring the case under some recognized head of equity jurisdiction and present some actual or threatened and irreparable injury to complainant's rights for which there is no adequate legal remedy. * * * "

Injunctive processes of law are available to be invoked in an action challenging the constitutionality of a legislative act and of the carrying out or enforcement of its provisions. The appellants plead sufficient facts which, if sustained by the record, would entitle them to injunctive relief. Injunctive relief is ancillary to the main issue. The main issue is whether the resolution is constitutional. It goes without saying that a person who is injured or prejudiced by an unconstitutional law can complain of it. *Kohler v. Benckart*, Ky., 252 S.W.2d 854 (1952); *Second Street Properties, Inc. v. Fiscal Court of Jefferson County*, Ky., 445 S.W.2d 709 (1969). And if the resolution is unconstitutional, then, and in

that event, the rights of the appellants may be protected by permanent injunction.

Appellants complain that the resolution will so restrict their operations that their income will be inadequate to finance their investment and furnish them a profit on their investment.

■ We accede to the proposition that the right to earn a livelihood by following the ordinary occupations of life is protected by the Fourteenth Amendment to the United States Constitution. However, nowhere is it suggested that there is a constitutional right or a statutory right which suggests that the ordinary occupations of life are not subject to reasonable regulations, nor is there any guarantee that the occupations will be financially profitable. The appellants have not been singled out or dealt with differently by the resolution than any other person coming within its provisions. We are not persuaded that the ordinance deprives the appellants of the right to earn a livelihood.

■ Further, appellants argue that the resolution is unconstitutional in that it is an exercise of police power to promote private industry. In support thereof, they charge that the fiscal court proposes to grant exclusive and monopolistic franchises which impinge on and completely fence in their cable television systems. If the districts in which the appellants operate are circumscribed by other districts, it is only by reason of the location, and there has been no challenge made to the manner in which the topographical location of the districts was made.

The rules and regulations of the Federal Communications Commission require all CATV Systems to have a franchise from the local authorities by 1977 before they can be qualified to remain in operation. It is imperative, therefore, for the continued operation of cable television that the companies be franchised. There is no showing made by the appellants that any cable operator in Floyd County, Kentucky, will be promoted or benefited in any manner different than himself.

This court will not inquire into the motives of the legislative body, but will only concern itself with the validity of the regulations. Section (2) of the resolution provides:

"That these areas be advertised for bids on an area basis and that exclusive Franchises be awarded to the highest and best bidder, such best bidder to be selected by the Fiscal Court, taking into consideration the ability financially and educationally to operate such system and the moral character and fitness of such bidder."

■ To the extent that only the highest and best bidder in each district will be awarded a franchise for that district, this will be a monopoly in that operator and in each operator in each district. The fiscal court has determined that such a method of operation will be for the best interest of the community. Since this is a legislative matter on which the fiscal court is authorized to act, we are not convinced that its action was not conducive to the welfare of the citizens of Floyd County or was an exercise of its police power to promote private industry, even though some persons may have a financial gain and others a financial loss.

■ Section (5) of the resolution provides:

" * * * no owner or operator of a Community Television System will be allowed to bid on an area in which a system is operating, other than the one in which he is presently operating, nor shall any person bid for same on his behalf or with the intent of permitting him to operate same. Should there be two (2) operators in the same area, then the first operator who has given continual service shall be preferred in awarding Franchise if he meets all other qualifications."

This section has, for its avowed purpose, the prevention of a monopoly, which is well and good. If it does so, it does so at the sacrifice of the specially trained and know-how of the persons best equipped to furnish cable television service, to wit: owners or operators of CATV Systems. It is not ques-

tioned that the fiscal court has the right to make reasonable classifications relating to cable television service. It must not, however, do so arbitrarily. Ky.Const. § 2. There must be some reasonable relationship between the regulation and the avowed purpose to be accomplished. Moreover, the resolution must tend toward the accomplishment or promotion of public safety, health, peace, good order, or morals. *Schoo v. Rose*, Ky., 270 S.W.2d 940 (1954).

In *Stites v. Norton*, 125 Ky. 672, 101 S.W. 1189 (1907), we considered a situation similar to the one which is now confronting us. The Board of Public Works of the City of Louisville, Kentucky, proposed to sell at public sale a franchise or privilege for the distribution and selling of electricity. A citizen and taxpayer of the City of Louisville brought an action seeking to enjoin the Board from carrying out its plan to advertise and sell a franchise. Primary attack was made on the section of the ordinance providing that " * * * the board of public works shall not accept or consider any bid made directly or indirectly by the Louisville Lighting Company, or persons acting in the interest of said corporation." The lower court adjudged that section of the ordinance valid. The Court of Appeals affirmed; and in doing so, said:

" * * * Legislative bodies should be very careful in prohibiting persons or corporations from bidding at such sales; and, if it should be made to appear that bids were rejected by reason of any ulterior, sinister, fraudulent, or unlawful purpose or reason, the court should grant relief; but, when made to appear, as in this case, that the prohibition of a bid was made for the just and lawful purpose of enabling the council to secure to the citizens their rights under the Constitution, the court should uphold rather than condemn its action."

In the case at bar there has been no showing made that the prohibition of a bid by appellants or other cable television operators was for the just or lawful purpose of enabling the fiscal court to secure to the citizens their rights under the Constitution.

Rather, it is made to appear that there is no rational, legal reason for prohibiting the present owners or operators of cable television service from bidding on franchises in areas other than those in which they operate.

The appellants charge that Section (6) of the resolution provides for the taking of private property for public purposes without due process of law. Section (6) provides:

"Should a person other than the operator of a system in an area, become the successful bidder, then such successful bidder must purchase the existing system at a price to be determined by an appraisal arrived at by three (3) appraisers, one appointed by the owner and one appointed by the successful bidder and one by the Fiscal Court."

In their brief the appellants state that, "The ordinance in this case provides for the arbitrary purchase by the successful bidder, of any existing CATV cable in his franchise area, at a price to be fixed by three appraisers, one appointed by the owner, one by the successful bidder and the third by the Fiscal Court." The trial judge, in his conclusions of law, determined, "There is no requirement in Section (6) of the resolution that any operator sell his equipment, but if such operator chooses to sell to the successful bidder, then such bidder would have to purchase according to such Section before he could have a Franchise. There is no taking of private property for private use without due process and no denial of any vested rights of plaintiffs."

 Counsel for appellants places a different interpretation on this section than did the trial judge, and, as a matter of fact, than does this court. It is the duty of this court to construe legislative acts, which, daily, we do. The question before this court, and the only question to which we direct our attention insofar as Section (6) of the resolution is concerned, is whether the former owner is forced to sell his system to the successful bidder. To construe this section as making it obligatory on the former owner to sell could raise serious constitu-

tional questions. We construe Section (6) to mean that the former owner may sell his system, but is not forced to do so, and that the new franchise owner must buy the system if the former owner desires to sell it. We find.there is no taking for any purpose, much less a taking of private property for a public purpose. As no objection is made from the standpoint of the successful bidder, who may be forced to purchase the system, we do not reach the question of whether that particular requirement is valid.

Appellees argue that the proper manner for challenging the resolution was by an appeal to the circuit court from the action of the fiscal court. It is unnecessary that we indulge ourselves with this issue. The record discloses that at no time did the appellees raise or argue this question in the circuit court. In *Pittsburg & Midway Coal Mining Co. v. Rushing*, Ky., 456 S.W.2d 816 (1969), we stated:

> "Furthermore and perhaps a better answer to this question, it is noted that Pittsburg did not raise or discuss this question in the circuit court. The rule is firmly established that the trial court should first be given the opportunity to rule on questions before they are available for appellate review. It is only to avert a manifest injustice that this court will entertain an argument not first presented to the trial court."

Since this issue was not presented to the circuit court, we cannot consider it on this appeal. *Heucker v. Clifton*, Ky., 500 S.W.2d 398 (1973).

The judgment is reversed insofar as it holds Section (5) of the resolution to be constitutional. In all other respects, the judgment is affirmed.