**William W. HALL, M. D., Movant,**

v.

**J. R. MILLER, Reyburn Ford, and Waitman Taylor, Respondents.**

Court of Appeals of Kentucky.

March 16, 1979.

**52**

Garland W. Howard, McKinley & Howard, Owensboro, for movant.

James M. Miller, Sandidge, Holbrook & Craig, P. S. C., Owensboro, for respondents.

Before MARTIN, C. J., and GUDGEL and REYNOLDS, JJ.

## OPINION AND ORDER

### I.

MARTIN, Chief Judge.

We have before us on this appeal a special proceeding allowed by KRS 118.176 to challenge the candidacy of J. R. Miller for the office of Mayor of Owensboro. The movant Hall has sought to set aside, under paragraph (4) of KRS 118.176, the decision of the Daviess Circuit Court declaring unconstitutional the three-year voter and residency requirements for mayoral candidates in second-class cities. KRS 84.280(2). Upon consideration of the record before us we deny the motion to set aside the order of the Daviess Circuit Court.

Also before us is the cross-motion of respondents Miller, Ford, and Taylor to set aside so much of the circuit court's order as finds that KRS 84.280(2) applies to mayoral candidates in second-class cities operating under a city manager form of government, in the event we were to find the statute constitutional.

The facts are not in dispute and have been stipulated by the parties.

On January 15, 1979, J. R. Miller filed his papers for the May 29, 1979 Owensboro mayoral primary. On January 26, 1979, Hall filed his motion pursuant to KRS 118.-176 to question the bona fides of Miller, alleging that Miller had not satisfied the three-year voter and residency requirements of KRS 84.280(2). Miller filed his answer, and respondents Ford and Taylor filed an intervening complaint, alleging that their rights as voters would be infringed upon if Miller's name were not allowed to be on the ballot.

Miller concedes that he did not move into his home in Owensboro until February 1, 1977, and that he did not register to vote until March 28, 1977, but he points out that he had lived in Owensboro proper from April, 1946, to October, 1952.

In its order of February 16, 1979, the trial court first found that the durational provisions of KRS 84.280(2) applied to mayoral candidates in second-class cities under the city manager form of government. The court went on to conclude that these provisions infringed upon the nonfundamental right of Miller to seek public office, and the fundamental rights of Miller, Ford, and Taylor to vote, travel, and to associate for political purposes, and declared these provisions to be violative of the equal protection clause of the Fourteenth Amendment, and thus void and unenforceable.

## II.

The question presented for our resolution in this proceeding is whether the three-year voter and residency requirements for mayoral candidates in second-class cities contained in KRS 84.280(2) are unconstitutional as violative of the equal protection clause of the Fourteenth Amendment to the United States Constitution. A further issue raised by the parties is whether this statutory section is applicable to cities of the second class who have adopted the city manager form of government.

■ A related sub-issue is whether KRS 84.280(2) conflicts with the Kentucky Constitution. Section 156 of the Kentucky Constitution divides the cities of the Commonwealth into six classifications. This section is an exception to Section 59 of the Kentucky Constitution that prohibits special legislation. However, an act, such as KRS 84.280(2), based on a classification merely according to classes of cities cannot be upheld unless it pertains to the organizations or government of the classified cities or unless the classification has a reasonable relation to the purpose of the act. *Mannini v. McFarland*, 294 Ky. 837, 172 S.W.2d 631 (1943). The wide disparity of residency requirements for the office of mayor in the six classifications appears not to meet this standard. However, because this case can be determined on the first two issues, we need not resolve this third issue.

## III.

■ We believe that before reaching the constitutionality of KRS 84.280(2), we must dispose of the question of its applicability to mayoral candidates in second-class cities that have adopted, as has Owensboro, the city manager form of government. In arguing the inapplicability of KRS 84.280(2), respondents rely on the inconsistencies between this section and KRS 89.470, which establishes the qualifications for elected officers in the city manager form of government.

KRS 84.280(2) provides:

The mayor shall be not less than thirty (30) years of age, shall possess the same qualifications and be under the same disabilities as members of the general council, and shall also have been a resident and voter of the city for not less than three (3) years next preceding his election.

KRS 89.470 provides:

Any legal voter not less than twenty-five (25) years of age and possessing the other qualifications prescribed by law shall be eligible to election to any office under the city manager form of government.

While there are inconsistencies, these differences are not significant. KRS 89.470 requires each officer in the city manager

form of government to be at least twenty-five years old, while KRS 84.280(2) sets out the minimum age as thirty. KRS 89.470, however, opens the way for the applicability of KRS 84.280(2) by providing that in addition to being at least twenty-five years of age, the officer must possess "the other qualifications prescribed by law." While Miller insists that the provision of § 234 of the Kentucky Constitution, that a mayor must live within the city from which he is elected, is the only other qualification contemplated by KRS 89.470, we believe that "other qualifications" is broad enough to include the durational voter and residency requirements found in KRS 84.280(2).

In arguing for the constitutionality of KRS 84.280(2), movant Hall argues that the number of people affected by the voter and residency requirements are just not great enough to justify declaring "a time honored" statute unconstitutional. In addition, he contends that the state has a right to regulate elections and access to the ballot, and that the voter and residency requirements achieve the legitimate governmental interest of insuring the candidate's familiarity with the people and the area, and in turn the peoples' familiarity with the candidate.

Miller, on the other hand, contends that KRS 84.280(2) infringes on the right to run for public office, to vote, to travel, and to associate for the advancement of political beliefs. In addition, he argues that a suspect classification is created by dividing potential candidates on the basis of whether they have lived and been registered to vote in Owensboro for at least three years. Miller insists that because fundamental rights are affected and a suspect classification is involved, a compelling state interest must be demonstrated to justify these restrictions. He then argues that as no such showing of a compelling state interest was made, the durational provisions of KRS 84.-280(2) must be stricken as violative of the equal protection clause of the Fourteenth Amendment.

Neither party contests the right of a governmental unit to require that a candidate for public office be a bona fide resident of the community which he wishes to serve.

IV.

To determine the equal protection issue, the court must consider the facts and circumstances behind the law, the interests protected, and the interests of those disadvantaged by the classification made by the statute. *Williams v. Rhodes*, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968). In reviewing these factors, the court must determine whether the "rational basis," or the "compelling state interest" standard should be applied in considering the law's constitutionality. The traditional and more flexible standard is whether there is a rational basis for the distinction that is made by the statute in question. *Kramer v. Union Free School District # 15*, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969). However, when the statute affects a fundamental right, *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), or the classification made by the statute is based on suspect criteria, *Graham v. Richardson*, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971), the compelling state interest test should be applied.

While the constitutional question presented here is one of first impression in Kentucky, there are other decisions regarding the constitutionality of various durational provisions imposed on candidates for public office. A review of these cases indicates a divergent view both as to the proper standards to be used as well as the result that should be reached in each case. The decisions are in agreement regarding the constitutional rights that are involved, the non-fundamental right to seek public office, and the fundamental rights to vote, to travel, and to associate for political beliefs. The disagreement occurs when determining the extent to which these fundamental rights were affected by the restrictions contained in the various durational statutes.

The decisions in *Walker v. Yucht*, 352 F.Supp. 85 (D.Del.1972), upholding a three-year residency requirement for state representatives in Delaware, and in *Chimento v. Stark*, 353 F.Supp. 1211 (D.N.H.1973), af-

firmed, no opinion 414 U.S. 802, 94 S.Ct. 125, 38 L.Ed.2d 39 (1973), and *Sununu v. Stark*, 383 F.Supp. 1287 (D.N.H.1974), affirmed 420 U.S. 958, 95 S.Ct. 1346, 43 L.Ed.2d 435 (1975), upholding a seven-year restriction for gubernatorial and state senate candidates in New Hampshire, have much to recommend them. However, we are of the opinion that the better reasoning is found in those decisions which have found that the restrictions placed on a person's nonfundamental right to run for public office significantly affect certain of the public's fundamental rights, and, therefore, apply the compelling state interest test in determining the constitutionality of these restrictions.

In *Mogk v. City of Detroit*, 335 F.Supp. 698 (E.D.Mich.1971), the court struck down a three-year residency requirement for membership on the city charter commission, holding the right of a person to become a candidate and the voters' rights were "inextricably intertwined." *Id.* at 700. The court reasoned, "a restriction upon who may be a candidate necessarily affects the efficacy of a person's vote." *Id.* at 701. In *Green v. McKeon*, 468 F.2d 883 (6th Cir. 1972), the court upheld a district court's finding that a two-year residency requirement for holding elective office was unconstitutional. The court noted the durational provision classified residents on the basis of recent travel, and stated that such a "classification alone requires that the requirement be strictly scrutinized because it operates to penalize the exercise of the basic constitutional right to travel." *Id.* at 884. The court further pointed out that the fact that the residency requirement denied something that was not a constitutional right, that is, the right to run for public office, was not material in deciding that the restriction be closely examined.

In a factual situation quite similar to the one before us, the court in *Bolanowski v. Raich*, 330 F.Supp. 724 (E.D.Mich.1971), struck down a three-year residency requirement for mayoral candidates. While the Supreme Court has not accorded candidacy the status of a fundamental right, *Bullock v. Carter*, 405 U.S. 134, 92 S.Ct. 849, 31

L.Ed.2d 92 (1972), the court in *Bolanowski* noted that there does exist "a federal constitutional right to be considered for public service without the burden of invidiously discriminatory disqualifications," citing *Turner v. Fouche*, 396 U.S. 346, 362, 90 S.Ct. 532, 541, 24 L.Ed.2d 567 (1970). The court went on to find that as both the right to vote effectively and to associate for the advancement of political beliefs were burdened by the restriction of the three-year residency requirement, a showing of a compelling state interest was necessary to justify such a restriction. The court found there was no compelling state interest in the argument that the three-year requirement was necessary to insure that candidates for public office understand the local problems and are familiar to the voters. The court concluded that such a provision did not meet "the exacting standard of precision" required of "statutes which selectively distribute the franchise." *Kramer, supra*, 395 U.S. at 632, 89 S.Ct. at 1892. While precise in its aim to exclude those not familiar with local problems, the court held the statute gave no assurance that all those who were excluded were "substantially less interested in and knowledgeable about the community and its problems than those [that could] file." *Id.* at 731.

## V.

Here, we have a durational provision requiring that a candidate for mayor be both a voter and a resident of Owensboro for three years before he is eligible to run. Not only are recent arrivals in Owensboro excluded by these provisions; those who have lived there more than three years but, for one reason or another have not been registered to vote for three years, are also excluded. In light of such a broad exclusionary effect, we find that KRS 84.280(2) has "a real and appreciable impact" on the voters and their choice of candidates, *Bullock, supra*; and, therefore, we believe that the compelling state interest test is appropriate in this case. An additional reason for the application of the compelling state interest test is that the statute disenfranchises on the basis of recent travel and,

therefore, requires a closer scrutiny because the statute "operates to penalize the exercise of the basic constitutional right to travel." *Green, supra* at 884.

The state interests the movant has argued in an attempt to justify the infringements on the right to vote effectively and to travel, are those of insuring that the candidate is familiar with the people in the area which he wishes to represent, the prevention of frivolous candidacies, and insuring that the voters are familiar with the candidate.

The need for familiarity with the voters of Owensboro and the issues that concern them was answered when the court in *Bolanowski, supra,* aptly pointed out the failings of durational requirements in that regard at 731.

It requires little imagination to conceive of an adult citizen of the city of Warren who has lived his entire life there without taking any interest whatsoever in municipal problems, and who would thus not fit the articulated qualifications sought to be insured by the requirement. It is also easy to conceive of a person who may have lived in this city for two and one-half years and gathered sufficient knowledge to be able to have a good understanding of all aspects of the municipality's difficulties.

The court in *Mogk, supra,* at 701 declared:

It is a matter of common knowledge that those who seek public office go to considerable effort and expense to secure exposure, and it may be safely assumed that opponents in an election race will seek out and make known the shortcomings of their opposition and assert their own superior qualifications for a particular post. If a short sojourn in the community is considered to be a disqualification the electorate may voice its sentiment at the ballot box.

The statements made in *Bolanowski* and *Mogk* are equally applicable to the present case. The true strength of our Constitution rests with its ability to grow and meet the needs of modern society. In the past KRS 84.280(2) served a useful purpose. Today with a mobile society lengthy durational requirements are violative of the equal protection clause of the Fourteenth Amendment.

The motion to set aside the order of the Daviess Circuit Court is DENIED. The motion of respondents is also DENIED.

All concur.