Ethal MILES, Movant,

v.

Kenneth SHAUNTEE, Respondent.

COMMONWEALTH of Kentucky, ex
rel. Steven L. BESHEAR, Attorney
General, Movant,

v.

Kenneth SHAUNTEE, Respondent.

LEXINGTON–FAYETTE URBAN COUN-
TY GOVERNMENT, Movant,

v.

Kenneth SHAUNTEE, Respondent.

Joe CISSELL, Movant,

v.

Phillip RUSH, Respondent.

Supreme Court of Kentucky.

Oct. 12, 1983.

Rehearing Denied Feb. 16 and March
8, 1984.

Robert Frederick Smith and Barry L. Master, Legal Aid Society, Inc., Louisville, for Ethal Miles (movant).

Shrader R. Miller, Louisville, amicus curiae for Louisville Apartment Association.

Anne Marie Regan, Louisville, Richard E. Blumberg, Berkeley, Cal., amicus curiae for National Housing Law Project.

Steven L. Beshear, Atty. Gen., Kevin M. Noland and Barbara J. Bryant, Asst. Attys. Gen., Consumer Protection Div., Frankfort, for Commonwealth of Kentucky, Ex Rel. Steven L. Beshear, Attorney General (movant).

Barbara B. Edelman, Director Division of Litigation, and Rena Gardner Wiseman, Corporate Counsel, Dept. of Law, Lexington, for Lexington-Fayette Urban County Government (movant).

Ben Hardy, Louisville, for Kenneth Shauntee (respondent).

Mark D. Esterle, Cumberland Trace Legal Services, Inc., Bowling Green, for Joe Cissell (movant).

Lee Coleman and William Ward Allen, Caudill & Allen, Bowling Green, for Phillip Rush (respondent).

WILLIAM M. DEEP, Special Justice.

This is a civil action which originated between Ethal Miles (hereinafter referred to as "tenant") and Kenneth Shauntee (hereinafter referred to as the "landlord").

In October, 1979, the landlord filed a Writ of Forcible Entry and Detainer against the tenant concerning the property located at 1780 Wilson Avenue, Louisville, Kentucky.

The tenant filed a counterclaim requesting damages due to the numerous defective conditions existing in the rental housing unit. Since the damages requested by the tenant by way of counterclaim exceeded the jurisdictional amount of the Jefferson District Court, this matter was transferred to the Jefferson Circuit Court.

Discovery followed after which the Court considered a Motion to dismiss that portion of the tenant's Answer and Counterclaim which sought to state a cause of action based on Kentucky's adoption of the Uniform Residential Landlord and Tenant Act, KRS 383.505–383.715 (hereinafter referred to as the "URLTA"), enacted in 1974. In comparison to the common law it replaced, the URLTA more specifically establishes the rights and obligations of both landlords and tenants.

In a Memorandum Opinion entered January 8, 1981, the Circuit Court held the URLTA in its present form, applicable to counties containing cities of the first class and urban county governments, unconstitutional as special legislation. Pursuant to Civil Rule 24.03 and KRS 418.075, the Circuit Court in its Memorandum Opinion directed that a copy of said Opinion be sent to the Attorney General, who was given an opportunity to file a Motion to Intervene and be heard before entry of a judgment.

The Commonwealth of Kentucky ex rel. Steven L. Beshear, Attorney General, filed a Motion to Intervene in this action which was granted by the Jefferson Circuit Court. After the Commonwealth filed its memorandum, the Jefferson Circuit Court maintained its position that the URLTA is unconstitutional as special legislation. As a result, in its Pre-Trial Order dated March 27, 1981, the Circuit Court granted summary judgment for the landlord as to the tenant's counterclaim based on the URLTA, and this ruling was later made a final appealable judgment on April 10, 1981. Both the Commonwealth and the tenant appealed this judgment.

Subsequently, on May 5 and 26, 1981, the Court held a hearing on the merits. After the hearing on the merits, the Jefferson Circuit Court ruled that the housing conditions in question were dilapidated, but declined to recognize a cause of action for the tenant based either on an implied warranty of habitability or on the Kentucky Consumer Protection Act. In addition, the Jefferson Circuit Court found the premises not uninhabitable. The Jefferson Circuit Court dismissed the tenant's counterclaim and sustained the landlord's forcible detainer action. The tenant appealed from these Findings of Fact and Conclusions of Law entered by the Circuit Court.

The Lexington-Fayette Urban County Government on July 19, 1981, filed a Motion to Intervene in this case, which was granted by the Court of Appeals on August 7, 1981.

At the same time on appeal was the case of *Joe Cissell v. Phillip Rush* which was on appeal from the Warren Circuit Court. In this case, the counterclaims of the tenant, Joe Cissell, alleging that Rush had violated an implied warranty of habitability, and that violations of the housing code of the city of Bowling Green constituted violations of the Consumer Protection Act, KRS 367.-170 as unfair, false, misleading and deceptive acts or practices in the conduct of the landlord's trade were dismissed by the Warren Circuit Court without any findings of fact thereon. Because the *Cissell v. Rush* case involved the same legal issues regarding the implied warranty of habitability and the applicability of the Kentucky Consumer Protection Act, the Court of Appeals ordered that the two cases be heard together.

On July 16, 1982, the Court of Appeals rendered an opinion on the consolidated appeals. In that opinion, the Court of Appeals held that the URLTA is unconstitutional, that no implied warranty of habitability is recognized within the Commonwealth, and that the Consumer Protection Act is inapplicable.

Petitions for Rehearing were filed with the Court of Appeals by Joe Cissell and Lexington-Fayette Urban County Government. Both petitions were denied. On October 28, 1982, this Court issued an Order granting the Motions of Ethal Miles and Commonwealth of Kentucky, ex rel. Steven L. Beshear, Attorney General, for discretionary review. On December 7, 1982, this Court issued an Order granting the Lexington-Fayette Urban County Government's Motion for Discretionary Review. At the same time this Court ordered that the above cases together with the case of *Joe Cissell v. Phillip Rush,* be consolidated to the extent that they be heard together.

The above cases present three novel and important questions: Whether the Kentucky Uniform Residential Landlord and Tenant Act (URLTA) as limited by KRS 383.715 to counties containing cities of the first class and urban-county governments constitutes "local" or "special" legislation in violation of Sections 59 and 60 of the Kentucky Constitution; whether an implied warranty of habitability should be recog-

nized as applying to landlord-tenant agreements; and whether the failure of a landlord to comply with local code provisions constitutes a violation of the Kentucky Consumer Protection Act, KRS 367.170 as an unfair, false, misleading and deceptive act or practice. In addition to the three questions above outlined, the appellant Miles has raised questions regarding certain procedural and evidentiary error committed by the Jefferson Circuit Court, and the appellant Commonwealth of Kentucky, ex rel. Steven L. Beshear, Attorney General, has raised the question regarding the landlord's standing to challenge the constitutionality of the URLTA.

This opinion will first address the issues of standing and the constitutionality of the URLTA, second, the status of the implied warranty of habitability in Kentucky, third, the application of the Consumer Protection Act to the factual circumstances presented by the Motions for Discretionary Review, and fourth, the procedural and evidentiary errors committed by the Jefferson Circuit Court.

## I.

WHETHER THE URLTA AS LIMITED TO THE COUNTIES CONTAINING CITIES OF THE FIRST CLASS AND URBAN–COUNTY GOVERNMENT CONSTITUTES "LOCAL" OR "SPECIAL" LEGISLATION IN VIOLATION OF SECTIONS 59 AND 60 OF THE KENTUCKY CONSTITUTION.

URLTA is an adoption of our General Assembly of the Model Residential Landlord-Tenant Code.[1] The Kentucky Legislature adopted the Act, recognizing what progress had been made in other legislatures in the tenant-landlord area.[2] It realized that Anglo-Saxon agrarian common laws, which had been the foundation of tenant-landlord relationships, provided

scant relevance to such current matters, particularly in urban areas. McCabe.

As noted by McCabe in his comments on URLTA:

But the 250 practicing lawyers, judges and law professors who drafted the act agreed the basic reform of the landlord-tenant laws could prevent marginal housing from sliding into the area of "uninhabitable housing"—and then, inevitably, into abandonment.

Present laws in most states encourage landlords to "defer maintenance" to net high short-terms profits and tax benefits. In this way apartment buildings die by degree as plumbing, electrical and other systems decay and eventually stop functioning entirely. At the same time, trash and garbage piles up, yards or common areas are unusuable, and the property becomes a neighborhood eyesore eventually, fit only as housing for rats.

Whenever a building reaches that point where taxes, mortage rates and other fixed expenses eat up all the rent collected from tenants who have a decreasing ability to pay it, the property is unsalvageable. That's why the Uniform Residential Landlord and Tenant Act is aimed at keeping decent housing clean and safe. Our legislature, by placing duties to care for the property on both the landlord and tenant (see KRS 383.595 and KRS 383.605, respectively), has attempted to keep the property on the market, provide a fair return for the landlord, and provide the tenant with a habitable place to live.

URLTA was enacted by the Legislature with the specific purposes and policies of encouraging landlords and tenants to maintain and improve the quality of housing and to make uniform the law with respect to the subject of URLTA among those states which enact it. KRS 383.505(2)(a) and (b). Section 383.530 "Territorial Application" provides that the URLTA shall apply to,

---

1. Model Residential Landlord-Tenant Code, 26 Rutgers Law Review 647 (1973). McCabe National Conference of Commissioners on State Laws (Appendix).

2. Other states have adopted similar versions of URLTA:

| Alaska | Florida | Michigan | Tennessee |
|---|---|---|---|
| Arizona | Hawaii | Nebraska | Virginia |
| California | Iowa | New Mexico | Washington |
| Connecticut | Kansas | Ohio | |
| Delaware | Montana | | |

regulate, and determine rights, obligations and remedies under a rental agreement, *wherever made,* for a dwelling unit located within this state. In limitation of general scope and purpose of the URLTA, and in conflict with the provisions set forth in KRS 383.505(2)(a) and (b) and KRS 383.530, the Legislature limited the applicability of the URLTA to counties containing cities of the first class and urban-county governments. KRS 383.715.

At the time URLTA was enacted and presently URLTA is limited by its terms to only two of the 120 counties in Kentucky, namely Jefferson and Fayette Counties.

Section 59 of the Constitution of Kentucky, provides that the General Assembly shall not pass local or special acts in any case where a general law can be made applicable. Section 60 of the Constitution of Kentucky provides that the General Assembly shall not indirectly enact any special or local act by exempting from the operations of a general act any city, town, district or county.

"Special" or "local" legislation as defined in *Board of Education of Jefferson County v. Board of Education of Louisville,* Ky., 472 S.W.2d 496 (1971) at 498 is as follows:

"A local act is one *confined* to territorial limits, other than that of the whole state or is applicable to some political subdivision and not to others. A special law is legislation which arbitrarily or *beyond reasonable justification* discriminates against some persons or objects and favors others." (Emphasis provided.)

The definition of "local" or "special" legislation provided by the Kentucky courts is similar to that definition used by the United States Supreme Court. In *Gray v. Taylor,* 227 U.S. 51, 33 S.Ct. 199, 57 L.Ed. 413 (1913), Justice Holmes, for a unanimous court, defined "local law" as:

"... a law that in fact, if not in form, is directed only to a specific spot...."

■ Although classifications according to population are allowable, where the subject is one of general application throughout the state and has been so treated in the general

scheme of legislation, distinctions favorable or unfavorable to particular localities resting alone upon numbers and density of population would be violative of Section 59 and Section 60 of the Constitution of Kentucky. *James v. Barry,* 138 Ky. 656, 128 S.W. 1070 (1910). Stated another way, an Act based upon a classification merely according to classes of cities cannot be upheld unless it pertains to the organizations or government of the classified cities or unless the classification has a reasonable relation to the purpose of the Act. *Mannini v. McFarland,* 294 Ky. 837, 172 S.W.2d 631 (1943); *Hall v. Miller,* Ky.App., 584 S.W.2d 51 (1979); *United Dry Forces, et al. v. Lewis, et al.,* Ky., 619 S.W.2d 489 (1981).

■ It is clear that the stated purpose and policy of the URLTA does not pertain to the organization or government of the Counties of Jefferson or Fayette. The issue then becomes whether the application of the URLTA to only counties containing cities of the first class and urban county governments has a reasonable relation to the purpose of the Act.

As quoted in *Chandler v. City of Louisville,* 277 Ky. 79, 125 S.W.2d 1026 (1939):

"It is a mistaken idea that because classification on the basis of population is sustainable in respect of legislation on certain subjects, it may be appropriate for all purposes of classification in legislative enactments. Such a basis for classification must have a reasonable relation to the purposes and objects of the legislation and must be based upon a rational difference in the necessities or conditions found in the groups subjected to different laws. If no such relation and difference exists, the classification is invalid."

The appellant Miles asserts that the rational basis for limiting the URLTA to counties containing cities of the first class and urban-county governments is (1) the number and density of tenants in such counties, (2) the closeness of the dwellings in these urban areas and the corresponding health problems, (3) the amount of substandard housing and prevention of economic waste, and (4) its current non-appli-

cation. Although it may be conceded that Jefferson and Fayette Counties have the first and fourth, respectively, largest number of tenants occupying substandard housing of the one hundred and twenty (120) counties in the Commonwealth, the mere acuteness of the problem with respect to these two counties does not serve as a rational basis for eliminating or refusing to deal with similar situations, involving the other 118 counties in the Commonwealth. The problems of public health, economic waste and substandard dwelling dealt with by the act are no less important in the other 118 counties in the Commonwealth. As stated by the Court of Appeals, "There is no indication that the problem of substandard rental housing and crowded rental quarters is any more acute in proportion to the population in Jefferson County and Fayette County than it is in other areas of the state." "Even when absolute numbers (rather than percentages) are used, it is apparent that Jefferson and Fayette counties are not the two counties with the largest number of substandard renter-occupied units. Pike and Hardin Counties occupy the second and third positions on the chart, with Fayette County coming in fourth." It is the opinion of this Court that the Jefferson Circuit Court and Court of Appeals decisions holding that the URLTA is special legislation within the prohibition of the Kentucky Constitution and therefore invalid is correct, and the decisions are affirmed.

■ As to the issue of whether the Appellee, Kenneth Shauntee, a Jefferson County landlord, has standing to challenge the constitutionality of the URLTA it is apparent that as a property owner and landlord in Jefferson County he is directly affected by the statute in question. "It goes without saying that a person who is injured or prejudiced by an unconstitutional law can complain of it." *Akers v. Floyd County Fiscal Court,* Ky., 556 S.W.2d 146 (1977), at page 149, citing *Kohler v. Benckart,* Ky., 252 S.W.2d 854 (1952); *Second Street Properties, Inc. v. Fiscal Court of Jefferson County,* Ky., 445 S.W.2d 709 (1969).

## II.

### WHETHER AN IMPLIED WARRANTY OF HABITABILITY EXISTS IN A LANDLORD-TENANT RELATIONSHIP.

At early common law, a lease was considered a conveyance of an estate in land and was equivalent to a sale of the premises to the lessee for the term of the demise. The lessee, as a purchaser of the estate of land, was subjected to the strict common law property rule of caveat emptor. The lessee had the duty to inspect the property for defects and took the land as he found it. *King v. Moorehead,* 495 S.W.2d 65 (Mo.App. 1973). There was no implied warranty by the lessor that the demised premises were habitable or fit for the purpose leased. A lessee wishing to protect himself as to the fitness of the premises had to exact an express covenant from the landlord for that purpose. *King, supra,* at 69.

Kentucky courts have followed other common law jurisdictions in applying the strict property rule of caveat emptor to leaseholds. As is often the case with strict rules, however, exceptions to concept of caveat emptor were created. In *Holzhauer v. Sheeny,* 127 Ky. 28, 104 S.W. 1034 (1907), the then Court of Appeals of Kentucky stated:

> The rule of caveat emptor applies to a contract of letting. The tenant must take the premises as he may find them. There is no implied covenant on the part of the landlord that they are fit for the purpose for which they are rented, or that they are in particular condition; but there is extension of the rule: If the landlord knows that the premises are defective or dangerous, and such defect is not discoverable by the tenant by ordinary care and the landlord conceals or fails to disclose the dangerous condition, he is liable to the tenant, his family and servants, or even his guests, for injuries sustained therefrom. *Holzhauer v. Sheeny,* 104 S.W. at 1035.

This extension was carefully limited in application to cases where actual knowledge was brought home to the landlord. *Frank-*

lin v. Tracy, 117 Ky. 267, 77 S.W. 1113 (1904).

Kentucky courts have also recognized exceptions to this general rule of law where a portion of the demised premises was retained by the lessor for the common use and benefit of a number of tenants, *Carver v. Howard,* Ky., 280 S.W.2d 708 (1955); *Richmond v. Standard Elkhorn Coal Co.,* 222 Ky. 150, 300 S.W. 359 (1928); *Home Realty Co. v. Carius,* 189 Ky. 228, 224 S.W. 751 (1920); *Offutt v. O'Leary,* 204 Ky. 726, 265 S.W. 296 (1924); *Cohen v. White,* 206 Ky. 209, 266 S.W. 1078 (1924); and where actions by the landlord constitutes a constructive eviction. *Estes v. Gatliff, et al.,* 291 Ky. 93, 163 S.W.2d 273 (1942).

As stated in the case of *Milby v. Mears,* Ky.App., 580 S.W.2d 724 (1979), at page 728. "It has been a long standing rule in Kentucky that a tenant takes the premises as he finds them. The landlord need not exercise even ordinary care to furnish reasonably safe premises, and he is not generally liable for injuries caused by defects therein."

█ The general rule in effect in Kentucky, is that a tenant takes premises as he finds them. *Whitehouse v. Lorch,* Ky., 347 S.W.2d 512 (1961). In the absence of a special agreement to do so, made when the contract is entered into, there is no obligation upon the landlord to repair the leased premises. *Horstman v. Newman,* Ky., 291 S.W.2d 567 (1956); *Mahan-Jellico Coal Company v. Dulling,* 282 Ky. 698, 139 S.W.2d 749 (1940).

Appellants argue that an implied warranty of habitability should arise from local housing or health codes absent an express provision in the contract of lease and absent such a provision in the ordinance or regulation in question. Absent an expression to the contrary such provisions do not create an implied warranty of habitability, or create a cause of action in the tenants. The remedies for violations are found within the codes, ordinances or regulations themselves. It is for the legislature to create rights and duties nonexistent under the common law. Absent legislation to the contrary the estab-

lished doctrine in effect in Kentucky is that the tenant takes possession of the premises as he first finds them, *Whitehouse, supra,* and the landlord, absent an express covenant to the contrary, has no obligation to repair the premises, *Horstman, supra,* and *Mahan-Jellico Coal Company, supra.* No implied warranty of habitability exists under Kentucky Law. The judgments of the Jefferson and Warren Circuit Courts, and the decision of the Court of Appeals on this issue are affirmed.

### III.

WHETHER FAILURE BY THE LANDLORD TO REPAIR AND MAINTAIN A RENTAL UNIT CONSTITUTES A VIOLATION OF THE CONSUMER PROTECTION ACT'S PROHIBITIONS AGAINST UNFAIR, FALSE, MISLEADING OR DECEPTIVE PRACTICES IN TRADE OR COMMERCE.

The appellants contend that the acts and practices of the landlords involved in this appeal constitutes "unfair, false, misleading or deceptive acts or practices" in violation of KRS 367.170. The acts and practices complained of constitute failure to make repairs on rental units and violations of local housing codes.

█ This Court has already expressed the availability of a cause of action or remedy for violation of a housing ordinance or code. Absent an expression to the contrary in such code or ordinance no cause of action can be implied in favor of the tenant. The cause of action for a violation rests solely with the governmental authority.

█ In both matters the tenant asserts that the landlord's failure to make needed repairs and his violations of the local housing code constitute unfair, false, misleading or deceptive acts. As a violation of a housing code does not create a cause of action in favor of the tenant, the failure of the landlord to comply with a housing code cannot be deceptive in the absence of an express covenant or agreement that the landlord would comply with such housing code. Likewise, in the absence of a duty or obliga-

tion to make repairs to a rental unit, the failure to make such repairs cannot be construed to constitute an unfair, false, misleading or deceptive act. Nor under the circumstances presented in the *Miles v. Shauntee* matter and in the absence of an implied warranty of habitability can the landlord's promises to make repairs, and his failure to do so in a manner satisfactory to the tenant, constitute an unfair, false, misleading or deceptive act unlawful under the Consumer Protection Act. A mere breach of promise does not constitute an unfair, false, misleading or deceptive act. The facts in *Miles v. Shauntee* indicate that the landlord made assurances of repair which were never significantly honored or fulfilled. This Court cannot hold as a matter of law that such assurances constitute unfair, false, misleading or deceptive acts declared unlawful under the Consumer Protection Act. The judgments of the Jefferson Circuit Court and the Warren Circuit Court, and the decision of the Court of Appeals, are affirmed.

### IV.

Appellant Miles has asserted that the trial court committed certain procedural and evidentiary errors. In light of the holding in this case, the appellant has no cause of action and it is unnecessary for us to rule on the Appellant Miles' contentions as to procedural and evidentiary errors. The opinion of the Court of Appeals properly disposed of the issues raised and is accordingly affirmed.

MORRIS B. BOROWITZ, EDWARD J. ELLIOTT, and WILLIAM M. DEEP, Special Justices, STEPHENS, C.J., and AKER and VANCE, JJ., concur.

STEPHENSON, J., concurs in the result only.