Kenneth W. ADAMS, Sr., Appellant,

v.

Marie MILLER, Appellee.

No. 94–SC–602–DG.

Supreme Court of Kentucky.

Oct. 19, 1995.

As Corrected Nov. 28, 1995.

Brian Carter House, Amy V. Barker, London, for Appellant.

William G. Crabtree, London, for Appellee.

STEPHENS, Chief Justice.

Appellant, Kenneth W. Adams, Sr., who is acting as the administrator of the estates of Sheila Jean Adams, deceased, and Christopher Paul Adams, deceased, and is the guardian of Phillip Wade Adams, appeals from a judgment of the Court of Appeals affirming the summary judgment of the Laurel Circuit Court in favor of appellee, Marie Miller. After reviewing the issues presented, this court also affirms.

This tragic case involves a fatal fire that occurred in a single-family home being rented by the victims, Sheila Jean Adams and her two children, Phillip and Christopher. Four-year-old Christopher survived the blaze but died as a result of his severe burns 48 days later. Eight-year-old Phillip survived but sustained second-degree scalp and leg burns and suffered from problems arising from smoke inhalation. The landlord, Ms. Miller, had rented the home to Ms. Adams two months earlier on an oral month-to-month lease.

According to the deputy fire marshal, the fire started when a hot coal or burning ember popped from an open fireplace onto near-

by mattresses. The heat source in the house consisted of two fireplaces that were not equipped with fireplace screens. The home was not equipped with smoke detectors.

Appellant argues three issues to this court. First, he asserts that appellee had a statutory duty, as well as a common law duty, to use reasonable care to protect tenants from injury by fire and that these were violated. For his second and third arguments, appellant maintains that damages for loss of parental consortium and damages for diminished enjoyment of life are both allowable as separate categories of damages.

■ On the first issue appellant argues that both statutory law and common law require reversal of this case. Appellant contends that K.R.S. 227.400 mandates that smoke detectors be installed in single-family dwellings. The statute reads as follows:

(1) No owner shall fail to furnish and use reasonable adequate protection and safeguards against fire loss, or fail to adopt and use processes and methods reasonably adequate to render such places safe from fire loss. ·

(2) No owner shall require or allow the public or any employee to go into or be in any property under his control which is not reasonably safe from fire loss.

K.R.S. 227.400.

Appellant maintains that the requirement "to furnish and use reasonable and adequate protection and safeguards against fire loss" includes the installation of smoke detectors. He believes the plain language of the statute indicates this requirement. As an alternative argument, he contends that even if the language is not explicit on this point, the legislature intended that the requirement exist and as a result this court should so hold.

Appellee, on the other hand, claims that the statute does not clearly and unambiguously state that installation of smoke detectors must occur, and with this argument we must agree. The language referred to by appellant does not clearly indicate that the legislature intended owners of single family dwellings be required to install smoke detectors. Had the legislature intended that smoke detectors be installed, this could easily

have been stated and was not. As a result, we cannot find that the explicit language of the statute supports appellant's contention.

■ We have also given great consideration to appellant's suggestion that the intent of the legislature was to require the installation of smoke detectors, notwithstanding what was specifically stated in the statute. In response to appellant's argument, appellee asks us to turn our attention to regulations promulgated under the authority of KRS 227.300(1) in order to understand the legislative scheme. This statute requires the Commissioner of Housing, Buildings and Construction to:

[P]romulgate reasonable rules and regulations based on good engineering practice and principles as embodied in recognized standards of fire prevention and protection, providing for a reasonable degree of safety for human life against the exigencies of fire and panic, and insuring as far as is practicable against fire loss. Such rules and regulations shall be known as the standards of safety.

K.R.S. 227.300(1).

Appellee highlights that these regulations, which constitute the Fire Prevention Code, specifically exempt single-family dwellings from complying with the code provisions. Regulation F–101.7.2., adopted pursuant to KRS 227.300 states: [t]his code does not apply to single family dwellings. 815 KAR 10:040, paragraph (22) defines a single-family dwelling as:

[O]ne (1) unit providing complete independent living facilities for one (1) or more persons including permanent provisions for living, sleeping, eating, cooking and sanitation, and which is not connected to any other unit or building.

815 KAR 10:040, paragraph (22).

This court recognizes that the intent of those drafting the regulations was, in fact, to exempt single family dwellings from these requirements. However, we do take notice of appellant's response, when he argues that these regulations do not meet the requirements of the statutory mandate in that they do not qualify as "recognized standards of fire prevention and protection" because of

this exemption. Appellant maintains that national standards require smoke detectors in single-family residences and have done so since 1976; and, therefore, Kentucky standards should as well. To support this contention, he refers us to the National Fire Protection Association Standard which has required smoke detectors in one and two-family dwellings since 1976. *See* Nat'l Fire Protection Standard, NFPA 101, *Life Safety Code*, 1993. Although appellant makes a valid point, unfortunately it is not decisive. The legislature and those to whom it has delegated rulemaking authority are not required to create a standard equivalent to one created by another rule making body.

■ The Commissioner, however, is bound by constitutionally imposed standards and by statutorily created limitations that result from the scope of the legislative grant of authority. First, we do not find that the Commissioner has exceeded his legislatively delegated authority. Furthermore, since the standards adopted by the administrative agency, pursuant to KRS 227.300 are unambiguous in their intent to exempt single family dwellings from these requirements, this court simply does not feel comfortable judicially creating this requirement and effectively taking a legislative role.

Appellant also argues that a requirement to install smoke detectors should be imposed upon a landlord as a matter of public policy. In *Wemyss v. Coleman*, Ky., 729 S.W.2d 174 (1987), we addressed whether the statute requiring the installment of seat belts in new passenger vehicles created a legal duty for one to utilize the restraint. We concluded in that case that "[we] cannot construe ... silence as a legislative expression of public policy for or against the use of a seat belt restraint." *Wemyss*, at 176. The statute we review today, KRS 227.400 is also silent on the issue of whether smoke detectors must be installed in single family residences. As a result, we simply cannot interpret this statute as indicating the existence of a legislative expression of a public policy in favor of requiring the use of smoke detectors in single family dwellings.

■ Appellant next urges us to recognize that the regulations are arbitrary in that no "rational basis exists for excluding single-family rental housing, especially when considering the extremely small cost of installing smoke detectors." With this contention we do not agree.

It is clear to this court that there is at least one rational reason for distinguishing between the two types of structures. Multiple family structures present a situation where the interests of other members of the public, i.e., those that are residing in other units of the building, are of extreme importance. The actions of one tenant in not obtaining a smoke detector inevitably affects the tenant occupying another unit who does wish the protection of a smoke detector. In the case of a single unit, this potential problem does not exist. The person or persons in physical control of the premises has the opportunity to install a detector in all areas of the structure. As is illustrated by this one distinguishing factor, the lack of a requirement for single family homes is not necessarily without reason or arbitrary.

■ As previously stated, appellant also presents a common law argument. Appellant urges this court to join other states in recognizing a change in the common law rule of *caveat emptor*, that a devisee takes the premises as he finds them. In Kentucky, this common law rule has been extended to apply to tenants and leaseholds. *See Lindsey v. Kentucky Development Co.*, 163 S.W.2d 499 (1942); *Miles v. Shauntee*, Ky., 664 S.W.2d 512 (1983). Appellant maintains that caveat emptor, grounded in agrarian English society, should not be utilized to relieve landlords from the obligation to utilize reasonable care. We are asked to recognize judicially that landlords must use reasonable care to protect their tenants from harm. Appellant claims that the common law should be modified to reflect the realities of modern life and general principles of tort law.

After careful consideration of appellant's adamant assertion that we impose a common law duty upon the landlord, we find that the current state of the law in Kentucky on this issue is proper. The law, as it now exists, provides adequate remedies when necessary.

Most notably, these remedies are found in the judicially created exceptions to the doctrine of caveat emptor. For example, this court has recognized that a landlord has a duty to disclose known latent defects at the time of the lease that are not detectable by an unsuspecting tenant. *See Holzhauer v. Sheeny*, 127 Ky. 28, 104 S.W. 1034 (1907); *Miles v. Shauntee, supra*, at 517. In order for this court to create a change in this area of the law, we would be required to legislate and are not prepared to do so. This is a function of the General Assembly and is more aptly performed with the research resources available to that law making body.

The last two issues raised by appellant address damages. First, appellant maintains that loss of parental consortium is an allowable category of damages under sections 14, 54, and 241 of the Kentucky Constitution. He urges us to recognize these damages for the first time in this commonwealth, stating that K.R.S. 411.135, which gives a surviving parent a cause of action for the loss of affection of a minor child, does not "limit the effect of the Kentucky Constitution nor the judiciary's freedom to interpret the constitution." We find appellant's argument unpersuasive. Damages in wrongful death statutes compensate for loss of decedent's earning power as is reflected in the following statement of this court:

> The damages recoverable in [a] wrongful death action have been clearly defined and limited almost from its inception. The damages are such sum as will fairly and reasonably compensate the decedent's estate for the destruction of the decedent's earning power, and do *not* include the affliction which has overcome the family by reason of the wrongful death.

*Louisville and N.R. Co. v. Eakins' Adm'r.*, 45 S.W. 529, 530 (1898) (emphasis in original).

Second, appellant contends that Phillip Wade Adams' claim for diminished enjoyment of life is allowable as a separate category of damages as well. Appellant maintains that other jurisdictions have recognized recovery of hedonic damages. *See Benson v. Superior Mfg. Co.*, 147 Wis. 20, 132 N.W. 633 (1911); *Mariner v. Marsden*, 610 P.2d 6, 11–12 (Wyo.1980). Appellant defines hedonic damages as follows:

> The hedonic value of life refers to the value of the pleasure, the satisfaction, or the "utility" that human beings derive from life, separate and apart from the labor or earnings value of life. To determine the hedonic loss, we seek to measure the value of human beings separate from the value of their output as mere "economic machines"....

Appellant's brief, pp 17–8, *quoting*, Michael L. Brookshire and Stan v. Smith, *Economic/Hedonic Damages: The Practice Book for Plaintiff and Defense Attorneys*, p. 164 (1990).

This court recognizes that there is measurable value to one's life other than his or her earning capacity. However, this value is already recoverable in the recognized category of mental suffering. There is no need to allow for the recoupment of hedonic damages as a separate category of loss.

As a result of the foregoing, this court affirms the summary judgment of the Laurel Circuit Court.

FUQUA, LAMBERT and REYNOLDS, JJ., concur.

LEIBSON, J., dissents in a separate dissenting opinion. STUMBO, J., joins in this dissent.

WINTERSHEIMER, J., dissents in a separate dissenting opinion. STUMBO, J., joins in this dissent.

LEIBSON, Justice, dissenting.

Respectfully, I dissent.

Under the old common rule the landlord owed no duty of care to the tenant regarding the condition of the leased premises. *Caveat emptor* applied, and the tenant took the premises as he found them. KRS 227.400 modifies the common law rule by imposing a statutory duty, stating:

> 1) No owner shall fail to furnish and use reasonable adequate protection and safeguards against fire loss, or fail to adopt and use processes and methods reasonably adequate to render such places safe from fire loss.

> 2) No owner shall require or allow the public ... to go into or be in any property

under his control which is not reasonably safe from the fire loss.

The Court of Appeals erred in affirming summary judgment under the old common law rule rather than the duty imposed by statute. The plaintiff's evidence is that the leased dwelling was a fire trap lacking both smoke detectors and fireplace screens that a jury would find reasonably necessary to comply with the statutory requirement stated in KRS 227.400. Certainly, there is sufficient evidence supporting this position to withstand summary judgment.

Appellee contends the exclusion in the Fire Code for single family dwellings excuses nonperformance of the duty imposed by KRS 227.400. This is untenable. KRS 227.300 authorizes the Commissioner to "promulgate reasonable rules and regulations based on good engineering practice and principles as embodied in recognized standards of fire prevention and protection," but there is no evidence that there is any rational basis for exempting single family dwellings from what is otherwise required by "recognized standards of fire prevention and protection." There is no rational basis to distinguish between the single family residence and the duplex next door, and nothing offered to support appellee's claim that multiple family dwellings involve a "greater degree of risk." On the contrary, the National Fire Protection Association suggests otherwise.

A regulation enacted to carry out a statutory purpose has the force of law, but the single family dwelling exclusion does not qualify. Reasonably construed, KRS 227.300 permits regulations to supplement the earlier statute, KRS 227.400, rather than to restrict it.

I would reverse the Court of Appeals and the trial court's summary judgment and remand for further proceedings.

Turning to the supplemental issues regarding damages:

1) Kentucky's wrongful death statute is not a survivor's loss statute, so it does not provide a basis for extending a right of recovery for minor children for loss of parental care. *See Department of Education v. Blevins,* Ky., 707 S.W.2d 782 (1986).

2) As to the personal injury claim of Phillip Wade Adams, the surviving child's loss of the enjoyment of life (so-called "hedonic damages"), in Kentucky this loss is recoverable within the concept of "mental suffering," and may be so argued to the jury. There is, however, no reason why the *right* to such damages should not be spelled out in the instructions, so the jury will understand there is no argument about the plaintiff's right to recover such damages where there is liability. This right can and should be *included* by adding to the instructions which provide for an award for "mental suffering" the language "... mental suffering, which includes loss of the enjoyment of living." To include loss of the enjoyment of life as an additional element of damages would be to invite double recovery.

Therefore, I would uphold summary judgment excluding additional damages for loss of parental care and loss of the enjoyment of life.

STUMBO, J., joins.

WINTERSHEIMER, Justice, dissenting.

I must respectfully dissent because the intent of the Kentucky legislature is abundantly clear in KRS 227.400 that this section should be read to require smoke detectors, with no exceptions given for single family residences. Further support for this interpretation is found in KRS 446.080. I join the dissent of Justice Leibson in regard to the smoke detector issue and his hedonic damages analysis.

However, beyond this claim, I believe that the court should recognize the potential for the claim of a loss of parental consortium. The court previously declined to recognize such a claim in *Brooks v. Burkeen,* Ky., 549 S.W.2d 91 (1977), because no court or legislature had yet done so. This is no longer the case.

Recognizing a claim for loss of parental consortium is the only appropriate progression of Kentucky law and is in harmony with the public policy objectives behind allowing claims for loss of consortium. The trend of other jurisdictions recognizes that a loss of

consortium results when the parent-child relationship is diminished in any way. This trend further recognizes that the balance of public policy concerns weighs heavily in favor of children's interests rather than in favor of the interests calling for a bar to recovery.

Recognition of a tort compensating for loss of parental consortium falls in line with the trend of the law in Kentucky to provide compensation for victims. From a very early date, the common law recognized a right of action in the master when a servant was tortiously injured because the master would suffer a loss of services in addition to whatever loss the servant suffered. By 1619, this idea was expanded and a husband was allowed to recover from the tortfeasor who had injured his wife. Recovery in these situations initially emphasized a loss of "services" but it is now clear that the husband's recovery for loss of consortium includes damages for loss of sexual attentions, society and affection, as well as for medical expenditures made on his wife's behalf. A majority of states now allow the loss of consortium claim to either spouse, as a matter of reform in the common law or as a matter of equal protection under Constitutional or statutory provisions. W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts*, § 125 at 931 (5th ed. 1984). In 1970, this Court recognized that a wife had a right to recover for personal damage resulting from the negligent infliction of injuries upon her husband. *Kotsiris v. Ling*, Ky., 451 S.W.2d 411 (1970). Today, Kentucky provides for damages for loss of consortium for spouses by statute. KRS 411.145.

Under the common law rule, a father was entitled to the services of his child, and therefore, he was entitled to recover for a loss of services or earning capacity when the child was tortiously injured. W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts*, § 125 at 931, 934 (5th ed. 1984). However, when the child was negligently injured, the parent had no claim for loss of the child's society and companionship. A partial exception to this rule developed under the wrongful death statutes in some states. For example, the loss of the child's society, companionship or affection may be recoverable in damages for a surviving parent. More specifically, in Kentucky, surviving parents may recover for loss of affection and companionship in a wrongful death action. KRS 411.135.

However, the interest of the child in proper parental care and affection ran into difficulties when a defendant was negligent in causing an injury to the parent. In such cases, the parent was entitled to recover for economic harms, such as lost wages, and theoretically the child was indirectly protected against loss of support. Yet, there was no protection given to the child for loss of society, guidance, and attention that resulted from cases of parental injury. Finally, several states have begun to recognize the error of such reasoning and have declared that children have a cause of action for loss of parental consortium. *Child's Right of Action for Loss of Support, Training, Parental Attention, Or the Like, Against a Third Person Negligently Injuring Parent*, 11 A.L.R.4th 549.

Kentucky has recognized a cause of action for loss of consortium in favor of spouses. We have also held that parents have an independent cause of action for loss of services and other pecuniary damages resulting from negligent injuries to their minor children. Thus, the next logical step is for Kentucky to provide children a claim for relief when their parent is severely injured. When such recovery is allowed to other, equally significant family members, there is no reason to deprive children of compensation for loss of their parent's love and affection, while allowing a parent or a spouse to recover.

Recognition of a parental consortium claim is in accord with the public policy goals behind permitting claims for loss of consortium. The balance of public policy concerns weighs heavily in favor of the interests of the child rather than in favor of the interests calling for a bar to recovery. Jurisdictions which have refused to recognize recovery for loss of parental consortium have usually done so out of a fear of multiplicity of actions, the difficulty of assessing damages, the fear of double recovery or the burden which might be placed on society. However, all of these concerns are outweighed by the need to protect children. Logic, justice, and public poli-

cy demand protection of their interest in the family relationship.

Courts which have accepted a cause of action for loss of parental consortium have found the concerns of double recovery and speculation on the appropriate amount of damages recoverable to be unfounded. The injury in a loss of parental consortium claim is no more remote than the injury in a spouse's cause of action for loss of consortium, which Kentucky already recognizes. Additionally, the injury is no more remote than in a claim for damages for wrongful death of a child, which is also recognized in Kentucky. Moreover, courts have recognized that duplicity of recovery can be easily avoided by a proper jury instruction that the child's damages are separate and distinct from the parent's injury.

The cause of action for loss of parental consortium was first recognized in 1980 by the Supreme Judicial Court of Massachusetts in *Ferriter v. Daniel O'Connell's Sons, Inc.*, 381 Mass. 507, 413 N.E.2d 690, 696 (1980). This Court should join the trend of other jurisdictions and recognize a claim for loss of parental consortium.

I would reverse the Court of Appeals and the Circuit Court.

STUMBO, J., joins in this dissent.