## In re BEVERLY HILLS FIRE LITIGATION.

Supreme Court of Kentucky.

May 31, 1984.

Stanley M. Chesley, Waite, Schneider, Bayless & Chesley Co., L.P.A., Louis F. Gilligan, Keating, Muething & Klekamp, Cincinnati, Ohio, William D. Hillmann, Covington, Thomas C. Spraul, Spraul & Reyering, Cincinnati, Ohio, for plaintiffs.

Charles S. Cassis, Mark R. Feather, Brown, Todd & Heyburn, Louisville, for Bryant Electric Co.

Robert C. Ewald, Wyatt, Tarrant & Combs, Louisville, for Reynolds Metal Co.

John David Cole, Cole, Harned & Broderick, Bowling Green, for South Wire Co. and Triangle PWC.

C. Alex Rose, Handmaker, Weber, Meyer & Rose, Louisville, for Pass & Seymour, Inc.

William V. Johnson, Johnson, Cusack & Bell, Chicago, Ill., for Marmon Group.

W. Andrew Patton, Roger Healey, Kohnen & Kohnen, Cincinnati, Ohio, for John I. Pauling, Inc.

Lee O. Fitch, Miller, Searl & Fitch, Portsmouth, Ohio, for Hatfield Wire & Cable Co.

William T. McCracken, Crabbe, Brown, Jones, Potts & Schmidt, Columbus, Ohio, for General Electric Co.

Jacob K. Stein, Bruce M. Allman, Paxton & Seasongood, Cincinnati, Ohio, for Slater Electric Company, Inc. and Square D.

James M. Wiles, Wiles, Doucher, Tressler & Van Buren Co., L.P.A., Columbus, Ohio, for Leviton Manufacturing Co. and Rhode Island Insulated Wire Co.

Donald L. Stepner, Adams, Brooking & Stepner, Covington, for Columbia Cable & Wire Co.

## CERTIFICATION OF THE LAW

LEIBSON, Justice.

The Hon. Henry R. Wilhoit, Jr., Judge, United States District Court, Eastern District of Kentucky, has certified to us for decision a question of Kentucky law as it applies to the above-styled litigation. The question as stated by the United States District Court is:

"Is KRS 413.135 unconstitutional as applied to facts of this case by virtue of Kentucky Constitution §§ 14, 54 and/or 241?" Memorandum Opinion and Order, Wilhoit, J., p. 5.

KRS 413.135 is the "no action" statute enacted in 1966 for the protection of archi-

tects and builders.[1] Its title is *"Actions for damages arising out of injury resulting from construction of improvements to real estate."* It provides, in pertinent part:

> "No action to recover damages, whether based upon contract or sounding in tort, resulting from or arising out of any deficiency in the design, planning, supervision, inspection or construction of any improvement to real property ... arising out of such deficiency ... shall be brought against any person performing or furnishing the design, planning, supervision, inspection or construction of any such improvement after the expiration of five (5) years following the substantial completion of such improvement."

For reasons that will be stated following a recitation of the facts, we have concluded that:

(1) Properly construed this statute has no application here to what is essentially a products liability case.

(2) Otherwise construed, this statute would be "special" legislation in violation of the Kentucky Constitution, § 59.

The certification from United States District Court states the "relevant facts and the nature of the controversy" as follows:

> "This is a class action tort suit involving a fire that destroyed the Beverly Hills Supper Club in Southgate, Kentucky on the evening of May 28, 1977. One hundred and sixty-five (165) people were killed in the fire, and numerous others were injured.
>
> The Supper Club was substantially rebuilt in 1970 and 1971 following a previous fire in 1970. No significant improvements were made to the Supper Club since that time...." Memorandum Opinion and Order, Wilhoit, J., p. 6.

The certification further states:

> "For a more detailed discussion of the facts of this case, the Court incorporates

the Sixth Circuit opinion located at *In Re Beverly Hills Fire Litigation*, 695 F.2d 207 (CA 6·1982), by reference." *Id.*

The Sixth Circuit opinion contains the following additional pertinent background information:

> "Plaintiffs named as defendants several manufacturers of 'old technology' aluminum branch circuit wiring, claiming those materials had been installed in the supper club and had caused the fire.
>
> Shortly before the trial was scheduled to begin, the trial judge ordered that it be bifurcated. The jury first would consider the question of 'causation in fact.' If aluminum wiring were found to be a cause of the fire, the jury would then determine questions of liability and damages.
>
> ... Plaintiffs asserted that the fire originated at an aluminum duplex receptacle. The receptacle, a standard electrical outlet into which electrical appliances are plugged, was allegedly located in the cubbyhole and connected to aluminum branch circuit wiring.
>
> Plaintiffs claimed that, due to a number of physical characteristics of old technology wiring, heat developed at the connection of the aluminum branch circuit wiring to the receptacle, and that this heat eventually ignited the wooden studs and other building materials in the wall...." 695 F.2d at 210–211.

After twenty-two (22) days of trial over a period of eleven (11) weeks, the jury found for the defendants on the "causation" question, the only issue submitted in the bifurcated proceedings. The United States Court of Appeals for the Sixth Circuit reversed, set aside the jury's verdict and ordered a new trial because "one of the jurors performed an improper experiment when he investigated the condition of the aluminum wiring in connections in his home." 695 F.2d at 211. The Sixth Circuit

---

1. "These statutes resulted from pressures brought to bear upon state legislatures by the architectural profession and the construction industry," *Limitation of Action Statutes for Architects and Builders—Blueprints for Non-Ac-* *tion,* 18 Cath.U.L.Rev. 361 (1969). See also, *Recent Statutory Developments Concerning the Limitations of Actions Against Architects, Engineers and Builders,* 60 Ky.L.J. 462 (1971–72).

held that this "one error ... is of such importance that it alone mandates vacating the judgment." *Id.*

On remand, before the new trial could take place, the defendants "renewed their original motion for summary judgment based upon Kentucky's no-action statute, KRS § 413.135." Memorandum Opinion and Order, Wilhoit, J., p. 2. To understand the question referred to us regarding KRS § 413.135 some additional background information, gleaned from the Sixth Circuit opinion, is necessary.

Before the first trial took place the defendants had moved for a summary judgment based on KRS 413.135, claiming the aluminum wire which they manufactured was subject to the protection of Kentucky's "no-action" statute when installed as a component of the supper club since it was an improvement to real property. The Sixth Circuit recites:

"The trial judge denied defendants' motions, finding the statute did not apply to those providing materials for construction projects. He determined that the statute should be narrowly construed because application of the statute would work a harsh result on those whose claim was barred without notice, and because the class of persons to whom the statute applies is uncertain. Since the judge did not view defendants as among the class of persons either named or intended to be protected by the statute, he found it unnecessary to decide whether the statute was offensive to Ky. Const. §§ 14, 54 and 241. At least at this juncture of the proceedings, we agree with the result reached by the trial judge, but not necessarily with his reasoning." 695 F.2d at 223–224.

The Sixth Circuit affirmed the decision of the trial judge on this point, but did so on the basis that our Court, in *Saylor v. Hall,* Ky., 497 S.W.2d 218 (1973), "... considered the constitutional defects of section 413.-135" and "concluded that, because section 413.130 (now KRS 413.135) could cut off a common law right to recovery before a cause of action even accrues, it violated Ky. Const. §§ 14, 54 and 241." The court quoted from *Saylor v. Hall, supra,* 497 S.W.2d at 224:

"The statutory expressions as they relate to actions based on negligence perform an abortion on the right of action, not in the first trimester, but before conception." 695 F.2d at 226.

The Sixth Circuit states the "tentative conclusion that the trial judge in this case did not err in refusing to apply the Kentucky 'no action' statute." *Id.* at 227. But the Sixth Circuit further states:

"If the Kentucky courts render an authoritative decision bearing upon the question while this case is open, the district court remains free to reconsider its position both in the light of that change and of any changes in the posture of the case on remand." *Id.*

The defendants have renewed their motion for summary judgment asserting that *Carney v. Moody,* Ky., 646 S.W.2d 40 (1982), is a definitive opinion overruling *Saylor v. Hall* and restoring the viability of KRS 413.135. Plaintiffs counter that the *Carney* decision was cited to the Sixth Circuit on defendants' Petition for Rehearing and was implicitly rejected by that court when it denied the Petition for Rehearing. It is at this juncture that the Federal District Court asks us to decide if KRS 413.135 is unconstitutional "as applied to the facts of this case by virtue of Kentucky Constitution §§ 14, 54 and/or 241?" Memorandum Opinion and Order, Wilhoit, J., p. 5.

In this case plaintiffs allege defendants are liable for the manufacture of a defective product, "old technology" aluminum wire, subsequently used as a component part of a building. Presumably this aluminum wire has many foreseeable uses having no connection with improvements to real estate. When asked to consider whether KRS 413.135 is a bar to plaintiffs' claims, before passing on the constitutionality of KRS 413.135 as an abstraction, the threshold question is whether the statute includes a products liability claim of this nature in the first place. This was the

approach of the trial judge before the first trial. We agree. The trial judge originally expressed the opinion that the Kentucky statute was not applicable to the facts of this case.

The Sixth Circuit viewed the case differently. It designated the defendant manufacturers in this case as "'materialmen' who design products for construction projects," and as such, "within the contemplation of the statute." 695 F.2d at 224. But the language of the statute does not express coverage for "materialmen" nor does it cover "construction projects" unless they are an "improvement to real property." The Sixth Circuit concludes "that a Kentucky court would disagree with those cases reviewing similar statutes which held that materialmen were not covered by such statutes. *See, e.g., Kittson City v. Wells, Denbrook & Assoc., Inc.,* 308 Minn. 237, 241 N.W.2d 799 (1976)." *Id.*

The majority of our sister states who have considered the matter have held that, absent express language covering materialmen or suppliers, these "no-action" statutes enacted on behalf of architects and builders do not and shall not be interpreted to cover such persons. The reasoning supporting this position is sound. There is nothing in the words, history or intended purposes of the Kentucky statute, nor in any Kentucky decision, to compel the Sixth Circuit to conclude Kentucky would disagree with this point of view.

The history and purpose of the statute is reviewed in an article in 60 Ky.Law Journal 462 (1971–72), "Recent Statutory Developments Concerning the Limitations of Actions Against Architects, Engineers, and Builders."

"In the mid 1960's, faced with what they considered to be an intolerable situation, architects, engineers, and builders, through their respective professional organizations, began a drive to alleviate the undesirable consequences of (eliminating privity). The American Institute of Architects [hereinafter AIA], along with the National Society of Professional Engineers and the Associated General Con-tractors, began to push for model legislation which would substantially curtail the limitless duration of liability imposed upon its members. In the span of approximately two years, 1965–67, thirty jurisdictions (including Kentucky) enacted or amended statutes of limitations specifically for architects, engineers, and builders." 60 Ky.L.J. at 464.

It is evident from this history that products manufacturers and materialmen as such were not among the pressure groups initiating the legislation, nor within its contemplation.

Kentucky adopted § 402(A) of the Restatement 2d of Torts, setting up liability for the manufacture of a product in a defective condition unreasonably dangerous to the user, in *Dealers Transport Co. v. Battery Distributing Co.,* Ky., 402 S.W.2d 441 (1966), shortly after KRS 413.135 was enacted. Before that, liability of the manufacturer for a defect in a component part was practically nonexistent. The Sixth Circuit viewed these defendants as "furnishing the design" for an improvement to real property because they were "designing parts intended to become part of the realty ..." 695 F.2d 225. But architects and builders, the groups authoring the legislation in question, had little reason at that time to anticipate that at a later time manufacturers would be held liable for defective design of components whether or not incorporated into a building, and less reason to protect them.

In considering the proper construction appropriate to KRS 413.135 we are motivated in part by our duty to render the acts of the legislature viable by interpreting such acts consistent with constitutional mandates, and to avoid construction that "threatens unconstitutionality," whenever reasonably possible. *George v. Scent,* Ky., 346 S.W.2d 784, 790 (1961). In *Fann v. McGuffey,* Ky., 534 S.W.2d 770, 777 (1975), our then recently enacted "no-fault" Motor Vehicle Reparations Act faced various constitutional challenges which this Court avoided by interpreting the language of the statute in line with "the duty of the court

to save (the legislation) if possible." In the present case, if the language of KRS 413.-135 is interpreted to include product manufacturers within its protected class, the statute is placed in fundamental conflict with § 59 of the Kentucky Constitution. Section 59 provides in pertinent part:

"§ 59. *Local and special legislation.*—The General Assembly shall not pass local or special acts concerning any of the following subjects, or for any of the following purposes, namely:

. . . .

Fifth: To regulate the limitation of civil or criminal cases."

"Special acts," as that term is used in § 59 is defined by us in *City of Louisville v. Klusmeyer,* Ky., 324 S.W.2d 831, 834 (1959) as follows:

"(T)he term 'special law' is legislation which arbitrarily or beyond reasonable justification discriminates against some persons or objects and favor others."

In *City of Louisville v. Kuntz,* 104 Ky. 584, 47 S.W. 592 (1898), shortly after our Constitution was enacted, in ruling upon a somewhat analogous statute of limitations, we said:

"When the constitution prohibits the legislature from passing special laws upon any given subject, it means that all laws upon that subject shall operate alike ... The legislature has power to make laws fixing the time when an action must be brought, but they must be general in their character, as the constitution prohibits the legislature from discriminating in favor of or against individuals or classes, when it declares that there shall be no special legislation on the subjects enumerated in section 59 ..." 47 S.W. at 592–593.

Certainly a law that protects product manufacturers if or when their product is used in the design or construction of a permanent improvement to real estate, but not otherwise, would discriminate in favor of such a manufacturer in an arbitrary manner and create a classification that has no reasonable justification. No one yet has suggested any reason why a special classi-fication should be created for products because they are used in construction of a building, as opposed to a motor vehicle or some other structure that is personalty. Many products, the present one included, are subject to foreseeable uses both in real estate improvements and otherwise. The statutory interpretation offered by the defendants would not only distinguish their product from other products in an arbitrary manner, it would result in the same product having immunity in some circumstances and not in others with no reasonable justification.

The continuing viability of § 59 of our Kentucky Constitution has been recently expressed in *Miles v. Shauntee,* Ky., 664 S.W.2d 512 (1984), declaring unconstitutional the Residential Landlord and Tenant Act of 1974 because there was no rational basis for limiting the Act to those counties containing cities of the first class and urban-county governments. In *Board of Education of Jefferson County v. Board of Education of Louisville,* Ky., 472 S.W.2d 496 (1971), we state "A special law is legislation which arbitrarily or *beyond reasonable justification* discriminates against some persons or objects and favors others." (Emphasis provided). 472 S.W.2d at 498. In short, KRS 413.135, if interpreted to include in its protection the manufacturer of a product simply because it was used as a component part in construction of a building, would discriminate in favor of such person arbitrarily and beyond reasonable justification in violation of § 59 of the Kentucky Constitution. We shall not so interpret it.

We have not addressed the underlying question of the constitutionality of KRS 413.135 as to those persons who are within its purview. In response to the question certified to us from the United States District Court for the Eastern District of Kentucky, we answer that KRS 413.135 is not applicable to this case.

AKER, GANT, LEIBSON and WINTER-SHEIMER, JJ., concur.

PAUL D. GUDGEL, Special Justice, concurs by separate opinion.

VANCE, J., dissents and files a separate opinion in which STEPHENSON, J., joins.

PAUL D. GUDGEL, Special Justice, concurring.

I agree with the majority that KRS 413.-135 is not intended to apply to manufacturers and suppliers of products and materials used as component parts in the construction of improvements to real property, and thus that it does not apply to the pending products liability action against aluminum wire manufacturers. The court's opinion, however, goes further than necessary to answer the question certified by indicating that, if KRS 413.135 were to apply here, it would be construed to be "special" legislation which violates section 59(5) of the Constitution.

Because the court has answered the question certified by indicating that KRS 413.135 does not apply to manufacturers and suppliers of products and materials, there is no need to address the section 59 issue. By needlessly addressing that issue, the court has effectively committed itself to declaring KRS 413.135 to be unconstitutional "special" legislation when the issue arises in the future.

I strongly believe in the principle of judicial restraint. I respectfully decline, therefore, to concur in the portion of the court's opinion which needlessly commits it to declaring a statute to be unconstitutional "special" legislation.

VANCE, Justice, dissenting.

This certification of law reminds me of the man who when asked what time it was proceeded to explain how to manufacture a clock.

CR 76.37 authorizes this court to answer questions of law pending before courts of other states and the federal courts upon a certification of the question by the originating court. Pursuant to this rule, the United States District Court for the Eastern District of Kentucky certified to us for answer a specific question, namely, whether K.R.S. 413.135 is constitutional as applied to the facts of a particular case.

No where in the certification of law by the majority is there an answer to this question. Instead, the majority concludes that K.R.S. 413.135 is not applicable to the facts of the case. Thus, an answer is given to a question that was not asked.

Not only did the United States District Court not ask us to advise it as to whether the statute is applicable, but on a prior appeal of the subject case the United States 6th Circuit Court of Appeals has held, for the purposes of this case at least, that the statute is applicable.

In effect, we decline to answer the question certified to us, and we answer a question not certified by telling the United States District Court that the United States Circuit Court was wrong.

Since the question answered was not the question asked, the United States District Court will be perfectly free to ignore the answer and probably will ignore it in view of the opposite conclusion reached by the superior federal court. Nevertheless, the certification will become precedent in Kentucky courts.

It is almost always helpful in deciding important legal issues to have the issue clearly stated, to have a record of evidence pertaining to the issue, and to have the briefs and arguments of counsel presenting all sides of the question. We do not have that situation here.

I think we should proceed with greater care in establishing precedents controlling in Kentucky, and I fear that in answering a question not asked by the United States District Court we have not only been presumptuous but also that we may have answered it incorrectly.

STEPHENSON, J., concurs in this dissent.