LEIBSON, Justice.
In these two consolidated cases[1] we again take up the issue of the constitutionality of KRS 413.135, the “no action” statute which provides those persons engaged in the “design, planning, supervision, inspection or construction of any improvement to real property” with immunity from suit for damages or injury caused by any deficiency after the expiration of five years following the substantial completion of such improvement.
In the first case, Tabler v. Wallace, a maintenance man sustained fatal injury while servicing an elevator in the Harley Hotel in Lexington, Kentucky. He was crushed between the top of the elevator and the roof of the elevator shaft. The Estate’s complaint charges that the overall design of the elevator and shaft was negligent and unreasonably dangerous because the clearance between the two was deficient and inadequate in terms of industry codes and safety standards. The Estate sued Dover Elevator Company, whose predecessor sold and installed the elevator and designed the shaft, and Tabler, the architect who approved the design of the shaft in which the elevator was housed.
In the second case, General Electric v. Nucor, the loss occurred because of the collapse of the roof of a warehouse of the General Electric Company in Louisville, Kentucky. The collapse occurred because four steel beams, or trusses, intended to support the roof, failed to do so. Nucor had designed the roof and its components, including the trusses, to comply with specifications provided to it. After the design *181 process was completed, Nucor used a standardized computer program to determine which trusses to manufacture. A Nucor employee admitted that he erred in recording a load number specified in the design on the shop list utilized to prepare the trusses. The result was that the trusses were fabricated to only one half the strength required by the design. On July 13, 1977, one of the defective trusses failed, tearing the roof and causing extensive damages. Four weeks later another defective truss collapsed causing further extensive damage to the warehouse and to inventory.
Garst-Receveur Construction Company was the builder employed by General Electric to construct the warehouse. Harmon and Conway, Inc. was the manufacturer’s representative for Nucor in the Louisville area. Garst-Receveur entered into a purchase order contract with Harmon and Conway which required Harmon and Conway to “furnish all steel joint and joist girders,” including the trusses which failed. Harmon and Conway then entered a standard purchase order with Nucor. Garst-Recev-eur, the builder, and Harmon and Conway, the supplier, were sued along with Nucor.[2]
The litigation in both Tabler v. Wallace and General Electric v. Nucor followed a similar course. In neither did the defendants attempt to plead KRS 413.135, the architects and builders “no action” statute, in response to the original complaint. Initially, in both cases, the defendants assumed that the statute was unconstitutional because our decision in Saylor v. Hall, Ky., 497 S.W.2d 218 (1973) held that it violated Sections 14, 54 and 241 of the Kentucky Constitution, which restricts legislative power to abolish or limit causes of action predating the Constitution.
In both Tabler v. Wallace and General Electric v. Nucor, the defendants were permitted to amend their answers years after the litigation commenced and shortly before trial, at the “eleventh hour,” based upon a perceived change in the constitutional status of KRS 413.135 announced in December 1982 in Carney v. Moody, Ky., 646 S.W.2d 40 (1982). Once the defendants were permitted to amend, in both cases the trial court then granted the defendants summary judgment on grounds that Carney v. Moody revitalized the “no action statute" because the claims were not filed within five years of completion of construction.
In Tabler v. Wallace the Kentucky Court of Appeals reversed the summary judgment on grounds that KRS 413.135 violates the equal protection provisions of both the constitution of Kentucky and the constitution of the United States. Both Saylor v. Hall, supra, and Carney v. Moody, supra, considered and analyzed KRS 413.135 “only” under Sections 14, 54 and 241 of the Kentucky Constitution prohibiting the abolition of legal remedies for wrongful death, personal injury, property damages or defamation, but left the question of equal protection an open matter. 497 S.W.2d at 223. The Court of Appeals considered the equal protection and special legislation arguments and concluded that this statute was nothing more than a grant of immunity, arbitrary in nature, with no reasonable basis for a separate classification.
Because of the importance of this constitutional question, we granted discretionary review.[3] The Court of Appeals then asked that we accept transfer of General Electric v. Nucor, involving the same constitutional question, pending before the Court of Appeals. We granted transfer and consolidated the cases for argument and consideration.
KRS 413.135 derives from legislation commencing in the mid-1960’s drafted and *182 promoted by three groups engaged in the construction industry: architects, engineers, and builders. These groups were the American Institute of Architects, the National Society of Professional Engineers, and The Associated General Contractors. See S mii h, “Recent Statutory Developments Concerning the Limitations of Actions Against Architects, Engineers and Builders.” 60 Ky.L.J. 462 (1971-72). Within a relatively short period of time these groups succeeded in having similar legislation enacted in almost every state. The reaction has been a multitude of cases challenging the constitutionality of this legislation on equal protection grounds. In all, we have been cited to cases from thirty-one sister states[4] and several federal jurisdictions, all addressing a constitutional challenge on equal protection grounds to this type of statute. If nothing else, the large number of cases illustrates the magnitude of the problem.
Many of these cases from foreign jurisdictions uphold the constitutionality of this legislation against the challenge on equal protection grounds, but turn on the language of the particular state constitution involved. A lesser number of cases, but a growing number, hold to the contrary. In general, the cases holding the statute unconstitutional have followed the reasoning of the first case to do so, Skinner v. Anderson, 38 Ill.2d 455, 231 N.E.2d 588 (1967):
“[T]he statute singles out the architect and the contractor, and grants them immunity. It is not at all inconceivable that the owner or person in control of such an improvement might be held liable for damage or injury that results from a defective condition for which the architect or contractor is in fact [primarily] responsible.... the statute takes away [the owner’s] action for indemnity against the architect or contractor.
The arbitrary quality of the statute clearly appears when we consider that architects and contractors are not the only persons whose negligence in the construction of a building or other improvement may cause damage to property or injury to persons. If, for example, four years after a building is completed the cornice should fall because the adhesive used was defective, the manufacturer of the adhesive is granted no immunity. And so it is with all others who furnished materials used in constructing *183 the improvement. But if the cornice fell because of defective design or construction for which an architect or contractor was responsible, immunity is granted. It cannot be said that one event is more likely than the other to occur....” 231 N.E.2d at 591.
Defendants claim that insofar as the challenge to constitutionality under the equal protection clause of the Fourteenth Amendment to the United States Constitution, the United States Supreme Court’s denial of certiorari in Carter v. Hartenstein, 248 Ark. 1172, 455 S.W.2d 918 (1970), appeal dismissed, 401 U.S. 901, 91 S.Ct. 868, 27 L.Ed.2d 800 (1971), is decisive. However, dismissal for lack of a substantial federal question is a summary disposition and not conclusive precedent, to be accorded “appropriate, but not necessarily conclusive, weight.” Mandel v. Bradley, 432 U.S. 173, 180, 97 S.Ct. 2238, 2242, 53 L.Ed.2d 199 (1977).
Before considering the federal constitutional challenge, a threshold question is whether the statute is unconstitutional under a different and narrower provision of the Kentucky constitution. See Fannin v. Williams, Ky., 655 S.W.2d 480 (1983). We have decided that KRS 413.135 violates Section 59(5) of the Kentucky Constitution, which is much more detailed and specific than the equal protection clause of the Federal Constitution. We declare the statute unconstitutional on state grounds, and do not reach the federal question.
The Kentucky Constitution, Section 59, is entitled “Local and special legislation.” It provides:
“The General Assembly shall not pass local or special acts concerning any of the following subjects, or for any of the following purposes, namely:

Fifth: To regulate the limitation of civil or criminal causes.”
When considered against its historical background, it is evident that Section 59 is more than simply another way of restating the generalized language of the equal protection clause of the Fourteenth Amendment to the United States Constitution. Indeed, Sections 1, 2 and 3 of the Kentucky Constitution which provide that the General Assembly is denied arbitrary power and shall treat all persons equally, suffice to embrace the equal protection clause of the Fourteenth Amendment.
But the debates of the Kentucky Constitutional Convention of 1890 and its detailed list particularizing twenty-nine different subjects where the “General Assembly shall not pass local or special acts” provide convincing evidence of the reasons for Section 59, prohibiting local and special legislation. See Debates, Constitutional Convention of 1890, 4 Vol.
The history of the times and the nature of the problem becomes clear when one reads the debates. Unbridled legislative power had become the captive of special interest groups. Concern for limiting the powers of the legislature in general, and with cutting off special and local legislation in particular, was the primary motivating force behind enactment of the new Ken-, tucky Constitution of 1891.
Limitations of time and space prevent restating the proceedings in detail. A few excerpts will suffice:
Delegate Mackoy:
“... now, if there is any one evil more than another which the people of this State have earnestly demanded should be corrected by this Convention, it was that local and special legislation should be rooted up entirely_” Vol. 3, p. 4019.
Delegate Young:
"... no special provisions for anybody, no exemptions, but all to have the same protection and all live under the same law, and no special benefits to anybody....” Vol. 3, p. 3996-97.
Delegate Knox:
“... look at the ponderous volumes of private acts passed our Legislature within the last few years, and enumerate the horde of railroad and other corporations which have been exempted from taxation, and allowed a variety *184 of other special privileges, while battening like vampires upon the substance of the people_” Vol. 1, p. 466.
Delegate Carroll:
"... except for the vicious legislation and the local and special laws of all kinds and character passed by the Legislatures that have met in Kentucky for the last twenty years, that no proposition to call a Constitutional Convention could ever have received a majority of the votes of the people of Kentucky.” Vol. 1, p. 1482.
City of Louisville v. Kuntz, 104 Ky. 584, 47 S.W. 592 (1898) followed with the new constitution fresh in mind. Our Court struck down as special legislation an act of the General Assembly providing a shorter statute of limitations for cities than existed for other claims for personal injury or property damage. The Court stated:
“Section 59 of the Constitution expressly prohibits the legislature from passing a local or special act relating to limitation, and this case clearly illustrates the wisdom of the provision.”
Attempted justification for a special protected classification for cities in 1898 would be more easily understood than the attempt to justify a special classification for architects, engineers and builders in 1965. Nevertheless, such special classification could not withstand constitutional challenge.
Other cases invalidating special statutes of limitations under Section 59(5) of the Kentucky Constitution include Commonwealth v. McCoun, Ky., 313 S.W.2d 585 (1958); City of Louisville v. Louisville Taxicab & Transfer Co., Ky., 238 S.W.2d 121 (1951); and Corley v. City of Louisville, 104 Ky. 372, 47 S.W. 263 (1898).
In City of Louisville v. Klusmeyer, Ky., 324 S.W.2d 831 (1959), our Court struck down a statute seeking to protect city government by imposing primary liability upon the abutting property owner for injuries caused by defects in the sidewalk in cities of the first-class. Although our Constitution permits special legislation made local to a particular class of city where it pertains to organization and government, it prohibits other legislation made applicable to a single class “not based upon a natural, real or substantial distinction inhering in the subject matter.” 324 S.W.2d at 834.
In contrast to the extensive history of our present constitution, the absence of any legislative history for KRS 413.135 is equally revealing. We know who initiated and lobbied for the legislation, but we know of no committee meetings or legislative debate discussing its purpose. The only legislative “history,” as such, for KRS 413.135, is that contained in the title to the act:
“An Act relating to the Statutes of Limitations governing the bringing of certain types of actions for wrongful death, personal injuries or damage to real or personal property, and creating a new section of Kentucky Revised Statutes, Chapter 413.” Ky.Acts, Ch. 246 (1966).
This title serves more to conceal than to reveal the nature of the act. It is an act which denies the right to sue for any cause (not just “wrongful death, personal injuries or damage to ... property”) five years following the substantial completion of construction. It does not function as a statute of limitations, but only to cut off claims which have not accrued within that period. It specifically provides that it does not supplant or extend existing limitations of actions pertaining to the same subject matter, such as one year after the cause of action accrues for personal injury or wrongful death (KRS 413.140) and five years after the cause of action accrues for property damage (KRS 413.120). Instead, KRS 413.135 functions as a one-way ticket to “Topsy-Turvy Land,” a place described by Judge Jerome Frank in Dincker v. Marlin Firearms Co., 198 F.2d 821, 823 (2d Cir.1952), where you “die before you are conceived, or be divorced before ever you marry, or harvest a crop never planted, or burn down a house never built, or miss a train running on a nonexistent railroad.”
*185 The argument is that the act is called a “statute of limitations” but its purpose is not to limit the time in which to bring causes of action which have accrued but to extinguish causes of action which have not yet accrued, and that, whereas the title to the act is generalized, the contents of the act refer to a narrowly defined and exclusively protected class. The Alabama Supreme Court has invalidated a similar architects and builders immunity statute under that state’s counterpart to Section 51 of the Kentucky Constitution. We need not decide the constitutional challenge presented by Section 51, since we have decided this case under Section 59(5). However, the arguably deceptive nature of the title of this act re-enforces the perception that it was enacted in response to a lobbying effort rather than because of reasonable, natural and justifiable distinctions between the protected group and others.
The fundamental question is whether the General Assembly had a reasonable basis for this legislation sufficient to justify creating a separate classification for certain persons engaged in the construction of improvements to real property, granting these persons a special immunity, cf. Miles v. Shauntee, Ky., 664 S.W.2d 512 (1984); Board of Education of Jefferson County v. Board of Education of Louisville, Ky., 472 S.W.2d 496 (1971). The South Carolina court stated in Broome v. Truluck, 270 S.C. 227, 241 S.E.2d 739 (1978):
“While it is broadly stated that a vital distinction exists between architects, engineers and contractors on the one hand and owners and manufacturers on the other, such vital distinction is no where pointed out such as to justify granting immunity to one group and not to the other.” Id. 241 S.E.2d at 740.
A number of different reasons have been suggested by the defendants and those filing amicus curiae briefs on their behalf for creating a separate classification for these groups. But these are offered only as possible reasons that could have existed, not as reasons that did in fact exist. The justifications offered are largely self-contradictory. For instance, one brief argues that the justification for the statute is to prevent the protected class from being inundated by law suits; another that ninety percent or more the cases of this type involved damages or injuries occurring within five years of construction and the statute addresses very few stale claims that present a disproportionate and excessive burden on the building industry.
One brief argues that it is reasonable to protect architects and builders and not product manufacturers and suppliers because product manufacturers and suppliers can utilize factory control and pretesting procedures and thus control their negligence in a way not available to architects and builders; another that the public does not need the same protection from architects and builders that it needs from product manufacturers and suppliers, because architects and builders have inspectors constantly looking over their shoulders and because no building can be occupied until after it has been thoroughly inspected.
The same evidentiary difficulties that confront builders and architects confront every litigant involved in an injury arising from the construction of an improvement to real property. As stated in Overland Construction Co. v. Sirmons, 369 So.2d 572 (Fla.1979):
“Undoubtedly, the passage of time does aggravate the difficulty of producing reliable evidence.... The impact of these problems, however, is felt by all litigants. Moreover, the difficulties of proof would seem to fall at least as heavily on injured plaintiffs, who must generally carry the initial burden of establishing that the defendant was negligent.” Id. at 574.
One defendant conceded that the justifications offered were self-contradictory, but argued that their contradictory nature was immaterial so long as one or the other of the reasons is not irrational. The creative abilities of lawyers suggesting possible reasons after the fact does not suffice to provide the kind of justification that is required for special legislation to be *186 valid under Section 59 of the Kentucky Constitution.
Defense counsels’ arguments throughout have been to the effect that any reason however imaginative that could have existed requires us to uphold otherwise discriminatory legislation. On the contrary, there must be a substantial and justifiable reason apparent from legislative history, from the statute’s title, preamble or subject matter, or from some other authoritative source.
One of the principal arguments offered in support of special protection for architects and builders as contrasted with product manufacturers and suppliers is the supposed distinction between providing goods and services. To explore this argument requires some brief historical reflection.
There has never been any distinction under a negligence theory of liability between the treatment of goods and services. Following a landmark English case decided in 1842, Winterbottom v. Wright, 10 M. & W. 109, 152 Eng.Rep. 402 (1842), which in fact “held only that the obligation of a contract could give no right of action to one who was not a contracting party (Prosser, Law of Torts, 4th Ed. 1971),” American courts erroneously applied to tort cases the contract doctrine of privity. They held that there must be a contractual relationship between the parties as a prerequisite to tort liability. This error was exposed and corrected for negligence cases by Justice Benjamin Cardozo in the landmark case of MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050 (1916). Following the demise of the erroneous defense of privity in negligence cases, there was a growing number of suits against architects and builders based on defects in construction. See Smith, Recent Statutory Developments Concerning the Limitations of Actions Against Architects, Engineers, and Builders, supra. It was this growing number of suits, not any distinction in negligence law between goods and services, that caused certain professional groups to lobby for special legislation. For similar reasons the railroads and others had sought and obtained special privileges from the General Assembly during the 1880’s and thus precipitated a constitutional convention.
Nothing in this set of circumstances provided a constitutionally acceptable reason to discriminate between goods and services. In In re Beverly Hills Fire Litigation, Ky., 672 S.W.2d 922 (1984), we pointed out that this statute excluded material-men for no well considered “reason,” but because they were not “among the pressure groups initiating the legislation.” 672 S.W.2d at 925. Landowners are similarly excluded from this protection. Thus, whatever the statutory objective, it was achieved by this statute in a discriminatory fashion. The express purpose of Section 59(5) of the Constitution is to prevent those who have sufficient political power or who can afford a persuasive lobbyist from achieving immunity from accountability to the law that governs others. See Phillips v. ABC Builders, 611 P.2d 821 (Wyo.1980), invalidating an architects and builders immunity statute under a constitutional provision substantially identical to our Kentucky Constitution Section 59(5).
In the last twenty years an additional theory of liability labeled “strict liability in tort” has developed against products manufacturers and suppliers who fall within the class described in Section 402A of the Restatement (Second) Torts. But there has never been any distinction under a negligence theory between the treatment of goods and services.
Tort Law in America, An Intellectual History, by Prof. G. Edward White of the University of Virginia Law School, traces the growth and development of tort law from the common law writ system to the negligence theory during the last half of the last century and the early part of this one. The treatment of the concept of negligence as expressing a universal duty is a hundred years old.
“The growth of negligence from the omission of a preexisting, specific duty owed to a limited class of persons to the *187 violation of a generalized standard of care owed to all ensured the emergence of Torts as an independent branch of law.” G.E. White, Tort Law in America, An Intellectual History, 18 (1980). The concept of negligence preexisted the
Kentucky Constitution. The question debated in Saylor v. Hall, supra, and Carney v. Moody, supra, was whether the privity requirement was part of the negligence concept in the period before the 1891 Constitution. A 1905 case, Simons v. Gregory, 120 Ky. 116, 85 S.W. 751 (1905), is cited for the proposition that it was. However, this reads more into Simons v. Gregory than the language of the opinion provides. Carney v. Moody reached an opposite result from Saylor v. Hall while conceding there was no “factual distinction” and without overruling it.
We need not write Chapter Three to Saylor v. Hall and Carney v. Moody. The inquiry has shifted from whether the statute is arbitrary and discriminatory, to constitutional issues not discussed in those opinions, equal protection and special legislation. With this the issue, constitutionality does not turn on deciphering the status of the cause of action “prior to the adoption of the Constitution (Carney v. Moody, supra, 646 S.W.2d at 41),” but on whether the General Assembly had a rational justification for creating a special class and conferring special privileges and immunity on that class at the time the statute in question was enacted. No substantial reason has been presented to us.
The only apparent basis for the present legislation is that a special class, builders, architects and engineers involved in construction, faced with a growing exposure to litigation, lobbied for a statute limiting their liability. There is no social or economic basis presented to justify a special class, only their own self-interest. Other groups similarly situated do not share in their legislative windfall. Their subjective reasons will not withstand public policy analysis.
The general public is exposed to injury, death and property damage from the collapse of a building. As in the recent catastrophe involving the collapse of the overhead walkway in the Hyatt Regency Hotel in Kansas City, many people from all walks of life may be injured in one catastrophe caused by faulty construction. The protection of the general public is sacrificed to the interest of a special group. This is the essence of the constitutional evil addressed by Section 59, the prohibition against local and special legislation.
Where to draw the line as to what constitutes a “reasonable basis” for otherwise discriminatory legislation is a difficult matter. We do not do so here beyond stating that imaginative reasons that could exist, without anything of a positive nature to suggest that they did exist, do not suffice.
In re Beverly Hills Fire Litigation, supra, held that KRS 413.135 had no application to the manufacturers of aluminum wire used in the electrical circuits in the Beverly Hills Supper Club. We concluded that the statute was not intended to cover products manufacturers, suppliers and ma-terialmen, based on the express language of the statute, the history of its development, and the constitutionally impermissible arbitrariness of attempting a distinction between products utilized as component parts in a building and the same other products not so utilized. One of the principal arguments between the parties in the present case is whether or not certain of the defendants should be classified as products manufacturers and suppliers, not including within the terms of KRS 413.135. Both sides rely on the Beverly Hills Fire Litigation case in support of their arguments.
In Tabler v. Wallace, one of the principal defendants is Dover Elevator Co. which, through its predecessor, manufactured and supplied the elevator and also assisted in the design and construction of the portion of the building which housed it. If there is liability it is based upon a combination of the elevator which is a product, and the shaft which is not, and Dover Elevator Co. had a hand in both items.
*188 In General Electric Co. v. Nucor, General Electric makes a plausible argument that the gravamen of the action is not the design or construction of the roof, or even the trusses, but an admitted error in what is a standardized process for manufacturing girders which are essentially uniform in nature. So viewed, Nucor is a products manufacturer and Harman & Conway, Inc. is a products supplier.
We need not attempt to unravel the dilemma which occurs in both of these cases in attempting a rational distinction between the role of products manufacturers or suppliers on the one hand, and design and construction on the other. It suffices that the argument highlights the arbitrariness of providing an immunity to those engaged in design and construction of a real estate improvement which does not extend to others similarly situated. It was this type of arbitrariness that Kentucky Constitution Section 59 in general, and Subsection 5 in particular, was designed to prevent.
The continuing viability of Section 59 of the Kentucky Constitution has been recently expounded in Miles v. Shauntee, supra, and in Board of Education of Jefferson County v. Board of Education of Louisville, supra. Commonwealth v. O’Harrah, Ky., 262 S.W.2d 385, 389 (1953) states our duty to support both the “letter and spirit” of the Constitution. We “may not countenance an evasion or even an unintentional avoidance of our fundamental law.” Id. KRS 413.135 is in fundamental conflict with Kentucky Constitution Section 59(5) and its historical development.
The decision of the Court of Appeals in Tabler v. Wallace is affirmed. The decision of the trial court in General Electnc v. Nucor is reversed. Both cases are remanded to the trial courts for further proceedings consistent with this opinion.
STEPHENS, C.J., and AKER, GANT and LEIBSON, JJ., concur in both cases.
VANCE, J., concurs in General Electric v. Nucor, but dissents in Tabler v. Wallace.
STEPHENSON, J., dissents in both cases by separate dissenting opinion.
WINTERSHEIMER, J., dissents in both cases.

. These cases involve multiple parties, and their roles are reversed from one case to the other. To simplify we will refer to the cases as Tabler v. Wallace and General Electric v. Nucor, and to the parties in their roles as plaintiff and defendants.

. The warehouse roof collapsed in two stages. General Electric claimed that KRS 413.135 is not applicable to Nucor’s alleged fraudulent concealment of the defect after the first partial collapse. Because of the decision of the unconstitutionality of the statute it is unnecessary that we address this further issue.

. The Court of Appeals ruled adversely to defendants’ claim that the constitutional issue was not preserved. The constitutional issue was the reason we granted discretionary review. We express no opinion on the preservation issue.

. CONSTITUTIONAL: Carter v. Hartenstein, 248 Ark. 1172, 455 S.W.2d 918 (1970), appeal dismissed, 401 U.S. 901, 91 S.Ct. 868, 27 L.Ed.2d 800 (1971); Salinero v. Pon, 124 Cal.App.3d 120, 177 Cal.Rptr. 204 (Cal.1981); Yarbro v. Hilton Hotels Corp., 655 P.2d 822 (Colo.1982); Cheswold Volunteer Fire Co. v. Lambertson Construction Co., 462 A.2d 416 (Del.Supr.1983); Mullis v. Southern Company Services, 250 Ga. 90, 296 S.E.2d 579 (1982); Twin Falls Clinic & Hospital Building Corp. v. Hamill, 103 Idaho 19, 644 P.2d 341 (1982); Matayka v. Melia, 119 Ill.App.3d 221, 74 Ill.Dec. 851, 456 N.E.2d 353 (1983); Beecher v. White, 447 N.E.2d 622 (Ind.App.1983); Burmaster v. Gravity Drainage District No. 2, 366 So.2d 1381 (La.1978); Klein v. Catalano, 386 Mass. 701, 437 N.E.2d 514 (1982); O'Brien v. Hazelet & Erdal, 410 Mich. 1, 299 N.W.2d 336 (1980); Calder v. City of Crystal, 318 N.W.2d 838 (Minn.1982); Anderson v. Fred Wagner & Roy Anderson, Jr., Inc., 402 So.2d 320 (Miss.1981); Reeves v. Ille Electric Co., 170 Mont. 104, 551 P.2d 647 (1976); Rosenberg v. Town of North Bergen, 61 N.J. 190, 293 A.2d 662 (N.J.1972); Howell v. Burk, 90 N.M. 688, 568 P.2d 214 (1977); Lamb v. Wedgewood South Corp., 308 N.C. 419, 302 S.E.2d 868 (N.C.1983); Hartford Fire Insurance Co. v. Lawrence, Dykes, Goddenberger, Bower & Clancy, 740 F.2d 1362, (6th Cir.1984); Freezer Storage, Inc. v. Armstrong Cork Co., 476 Pa. 270, 382 A.2d 715 (1978); McMacken v. South Dakota, 320 N.W.2d 131 (S.D.1982); Harmon v. Angus R. Jessup Assoc., 619 S.W.2d 522 (Tenn.1981); Sowders v. M.W. Kellogg Co., 663 S.W.2d 644 (Tex.App. 1 Dist.1983); Good v. Christensen, 527 P.2d 223 (Utah 1974); Yakima Fruit & Cold Storage Co. v. Central Heating & Plumbing Co., 81 Wash.2d 528, 503 P.2d 108 (1972).
UNCONSTITUTIONAL: Shibuya v. Architects Hawaii Ltd., 65 Hawaii 26, 647 P.2d 276 (1982); Skinner v. Anderson, 38 Ill.2d 455, 231 N.E.2d 588 (1967); Pacific Indemnity Co. v. Thompson-Yaeger, Inc., 260 N.W.2d 548 (Minn.1977); State Farm Fire and Casualty Co. v. All Electric, Inc., 660 P.2d 995 (Nev.1983); Henderson Clay Products, Inc. v. Edgar Wood & Assoc., 122 N.H. 800, 451 A.2d 174 (1982); Loyal Order of Moose, Lodge 1785 v. Cavaness, 563 P.2d 143 (Okla.1977); Broome v. Truluck, 270 S.C. 227, 241 S.E.2d 739 (1978); Kallas Millwork Corp. v. Square D Co., 66 Wis.2d 382, 225 N.W.2d 454 (1975); Phillips v. ABC Builders, Inc., 611 P.2d 821 (Wyo.1980).