Charlotte WHITE,

v.

**MANCHESTER ENTERPRISE, INC., et al.**

No. 93–cv–206.

United States District Court,
E.D. Kentucky,
London Division.

Jan. 11, 1996.

---

Michael Dean, Marilyn Benge McGhee, London, KY, for plaintiff.

Neville Smith, Timothy L. Wells, Smith & Wells, Manchester, KY, for defendant.

## OPINION AND ORDER

BERTELSMAN, Chief Judge:

The force and scope of Kentucky Revised Statute 411.051 as it relates to this action again comes before this court. This time the plaintiff challenges the constitutionality of the statute under the Constitution of the Commonwealth of Kentucky. This court certified this question to the Kentucky Supreme Court pursuant to Kentucky Civil Rule 76.37(1), but the Supreme Court declined to accept the certification. In addition, the Attorney General for the Commonwealth of Kentucky was served with the plaintiff's motion but declined to take a position on this issue. *See* Ky.Civ.R. 17.

In a previous opinion, this court held that KRS 411.051 was applicable to this case. *White v. Manchester Enterprise*, 871 F.Supp. 934 (E.D.Ky.1994). The statute at issue prohibits recovery of punitive damages for false statements contained in a newspaper unless the plaintiff has made a written demand for retraction prior to initiating an action.[1] The

---

1. KRS 411.051 provides, in pertinent part:
 (1) In any action for damages for the publication of a defamatory statement in a daily or other newspaper the defendant shall be liable for actual damages sustained by plaintiff. The defendant may plead the publication of a correction in mitigation of damages. Punitive damages may be recovered only if the plaintiff shall allege and prove publication with legal malice and that the daily or other newspaper

plaintiff now challenges KRS 411.051 as violating §§ 14, 54, 59 and 241 of the Kentucky Constitution.

The facts, as stated in the previous opinion, will be repeated here for the convenience of the reader.

## FACTUAL BACKGROUND

In 1993, plaintiff Charlotte White was employed by a corporation called "Native America, Inc." In that position, she organized and promoted Native American pow-wows across the country.

Ms. White organized her first pow-wow in Hialeah, Florida. Ms. White's second pow-wow was to occur in Manchester, Kentucky during the spring of 1993.

On April 8, 1993, defendants published an article and editorial stating, in part, that Ms. White left "a trail of bad checks" and was "briefly jailed on charges of fraud" in connection with the Hialeah pow-wow. The article further stated that "White is in hiding because of money she owes to Native American entertainers who came to Florida in January after being guaranteed up to $75,000 in fees" and that she left a Native American, Jimmy Boy Dial, with $10,000 in unpaid hotel expenses.

The editorial accompanying the article provided, in part:

Reports have surfaced that the organizer of the Manchester event allegedly defrauded both the Native Americans that were participating and numerous hotels during a Pow–Wow she organized in Hialeah, Florida in January.

[I]n this instance there was a very good possibility that had the [Manchester] event gone on, someone (maybe us taxpayers) would have been left holding a pretty hefty bag. . . .

[E]veryone, of course, is innocent until proven guilty. But there is enough evidence available to be pretty well convinced that this event will not happen, and if it does very few, if any, Native Americans will show up.

Although Ms. White admits that several days of rain hindered the success of the Hialeah pow-wow, she denies defrauding anyone, writing any bad checks, ever being jailed for any reason, being charged with fraud, responsibility for $10,000 in hotel expenses and being "in hiding."

Plaintiff initiated this action on August 2, 1993. On November 9, 1993, plaintiff's counsel submitted a written demand for retraction of the allegedly defamatory article. The November 9, 1993 letter was plaintiff's first written demand for a retraction.

Plaintiff has alleged claims for defamation and invasion of privacy. She seeks punitive damages as well as compensatory damages and costs.

## ANALYSIS

### Jural Rights Theory Not Applicable

 Plaintiff initially challenges KRS 411.051 as violative of the "jural rights" to which Kentuckians are entitled. The Kentucky Supreme Court has held that sections 14, 54 and 241 [2] preclude the legislature from abolishing, and perhaps limiting, causes of

---

failed to make conspicuous and timely publication of a correction after receiving a sufficient demand for correction.

(2) A "sufficient demand for correction" is a demand for correction which is in writing; which is signed by the plaintiff or his duly authorized attorney or agent; which specifies the statement or statements claimed to be false and defamatory, states wherein they are false, and sets forth the facts; and which is delivered to the defendant prior to the commencement of the action.

2. Section 14 of the Constitution of the Commonwealth of Kentucky provides:

All courts shall be open, and every person for an injury done him in his lands, goods, person

or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay.

Kentucky Constitution § 54 provides:

The General Assembly shall have no power to limit the amount to be recovered for injuries resulting in death, or for injuries to person or property.

Kentucky Constitution § 241 provides:

Whenever the death of a person shall result from an injury inflicted by negligence or wrongful act, then, in every such case, damages may be recovered for such death, from the corporations and persons so causing the same. Until otherwise provided by law, the action to recover such damages shall in all cases be prosecuted by the personal represen-

action if they exist at the time the statute is enacted. *Perkins v. Northeastern Log Homes,* 808 S.W.2d 809 (Ky.1991); *Tabler v. Wallace,* 704 S.W.2d 179, 183 (Ky.1985) (as modified on denial of rehearing on Feb. 27, 1986); *In re Beverly Hills Fire Litigation,* 672 S.W.2d 922 (Ky.1984); *Ludwig v. Johnson,* 243 Ky. 533, 49 S.W.2d 347 (1932); *See* Thomas P. Lewis, *Jural Rights Under Kentucky's Constitution: Realities Grounded in Myth,* 80 Ky.Law J. 953 (1992).

However, Kentucky's highest court has also held that § 54, the keystone to the jural rights arch, is applicable only in cases involving physical injuries to persons or property. *Jacobs v. Underwood,* 484 S.W.2d 855 (Ky. 1972). Indeed, in *Jacobs,* the court specifically decreed that § 54 does not apply to amounts recoverable in actions for defamation of character, such as the case at bar.[3]

Since Kentucky Constitution § 241 (which applies only to claims involving death), is clearly inapplicable, and § 54 does not apply to defamation claims, the plaintiff argues that § 14 (the open courts section) is sufficient to carry her jural rights argument. I disagree.

Kentucky's highest court, in deciding the *Jacobs* case, was aware that the three constitutional sections were frequently regarded as a package. Thus, that court's failure to construe § 14 as protecting recovery for injury to reputation as a jural right is significant. Section 14, standing alone, merely guarantees due process and access to the courts. It is the role of § 54 to protect that remedy from unjust diminution. *See* Lewis, 80 *Ky. Law J.* at 966. Accordingly, plaintiff's claim that KRS 411.051 violates her jural rights is without merit.

### The Statute Is Special Legislation which Violates Section 59 of the Kentucky Constitution

Section 59 of the Kentucky Constitution, which is entitled "Local and special legislation," provides:

> tative of the deceased person. The General Assembly may provide how the recovery shall go and to whom belong; and until such provision is made, the same shall form part of the personal estate of the deceased person.

The General Assembly shall not pass local or special acts concerning any of the following subjects, or for any of the following purposes, namely:

\* \* \* \* \* \*

Fifth: To regulate the limitation of civil or criminal causes.

\* \* \* \* \* \*

Twenty-ninth: In all other cases where a general law can be made applicable, no special law shall be enacted.

As revealed by the debates of the Kentucky Constitutional Convention of 1890, "[u]nbridled legislative power had become the captive of special interest groups. Concern for limiting the powers of the legislature in general, and with cutting off special and local legislation in particular, was the primary motivating force behind enactment of the new Kentucky Constitution of 1891." *Tabler v. Wallace,* 704 S.W.2d 179, 183 (Ky. 1985) (as modified on denial of rehearing on Feb. 27, 1986). Thus, the primary purpose of section 59 was to prevent special privileges for those with wealth and power sufficient to sway the Assembly and to ensure equality under the law. *Id.; see also Kentucky Harlan Coal Co. v. Holmes,* 872 S.W.2d 446 (Ky.1994); Charles E. Moore, *Punitive Damages in Wrongful Death Actions: Is KRS 411.184 Constitutional?,* 54 Ky.Bench and Bar 18 (1990).

The Kentucky Supreme Court has defined "special legislation" as that "which arbitrarily or beyond reasonable justification discriminates against some person or objects and favors others." *Kentucky Harlan Coal Co.,* 872 S.W.2d at 452 (quoting *Board of Education of Jefferson County v. Board of Education of Louisville,* 472 S.W.2d 496, 498

**3.** Plaintiff argues that the language in *Wittmer v. Jones,* 864 S.W.2d 885, 890 (Ky.1993) relating to punitive damages in an insurance bad faith claim as a protected jural right overrules *Jacobs.* This language, however, is dicta. This court deems itself bound by *Jacobs* until it is expressly overruled. *See Fireman's Fund Ins. Co. v. Sherman & Fletcher,* 705 S.W.2d 459, 463–64 (Ky.1986) (reiterating the view that the "jural rights" protect only rights arising out of death, personal injury and property damage).

(Ky.1971)). For a law to pass scrutiny under § 59, then, it must satisfy two requirements: (1) it must apply equally to all in a class, and (2) there must be distinctive and natural reasons inducing and supporting the classification.

*Kentucky Harlan Coal Co.*, 872 S.W.2d at 452.

Thus, in *Perkins v. Northeastern Log Homes*, 808 S.W.2d 809 (Ky.1991), the Supreme Court of Kentucky invalidated a special statute of repose for construction products incorporated into real estate. The offending statute had the effect of abolishing the causes of action of persons injured by defective products incorporated into real estate seven years after the completion of construction. Thus, if a person were injured more than seven years after such completion, the statute abolished his or her cause of action before it arose.

In that case, the court concluded that the statute under scrutiny constituted impermissible special legislation because "it would result in the same product having immunity in some circumstances and not in others with no reasonable justification." *Perkins*, 808 S.W.2d at 814 (quoting *In re Beverly Hills Fire Litigation*, 672 S.W.2d 922, 926 (Ky. 1984)) (internal quotation marks omitted).

In reaching that conclusion, the court noted that the special statute of repose applied to a product whose "use as a construction component in a real estate improvement rather than a component in personalty is a purely fortuitous circumstance." *Id.* Therefore, "to provide a statute of repose for products in some circumstances and not in others with no reasonable justification for making a distinction, violates § 59." *Id.* (quoting *Beverly Hills*, 672 S.W.2d at 926) (internal quotation marks omitted).

Applying this rationale to KRS 411.051, the statute provides a special rule for punitive damages only as to newspapers.[4] Only newspapers are exempted from liability for punitive damages if a defamation plaintiff fails timely to demand a retraction. No such benefit is afforded to magazines or other print media.[5]

A moment's reflection reveals the arbitrariness of this distinction. Suppose the same source provides a story to both a newspaper and a magazine and both use it. Suppose further that the story libels a private individual, who sues both without demanding a retraction. The newspaper would be protected from punitive damages, but the magazine would not.

Consider the same situation, except the newspaper originates the story and the magazine republishes the story contained in the newspaper. Even though it was most at fault, only the newspaper would be protected against an award of punitive damages.

There is no rational basis for these distinctions. As stated most recently in *Kentucky Harlan Coal Co.*, 872 S.W.2d at 452, to pass constitutional muster under § 59, the law must apply equally to all in a class, and there must be a distinctive and natural reason inducing and supporting the classification. Considering print media as the class, KRS 411.051 fails both prongs of the test. Considering only newspapers as the class, it fails the second prong, since there is no rational basis for classifying newspapers differently from magazines, newsletters or other print publications. Indeed, it may be difficult to tell whether some publications are newspapers or magazines, *e.g.*, *The National Enquirer* or *The National Law Journal*.[6]

---

4. Punitive damages are generally available in defamation cases involving private individuals as long as the plaintiff proves publication with actual malice. *Warford v. Lexington Herald–Leader Co.*, 789 S.W.2d 758 (Ky.1990); *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 349, 94 S.Ct. 2997, 3011–12, 41 L.Ed.2d 789 (1974).

5. KRS 411.061 provides a similar benefit for radio and television stations.

6. Webster's New Collegiate Dictionary defines a "newspaper" as "a paper that is printed and distributed usu. daily or weekly and that contains news, articles of opinion, features, and advertising" and a "magazine" as "a periodical containing miscellaneous pieces (as articles, stories, poems) often illustrated" or "a similar section of a newspaper usu. appearing on Sunday." Webster's New Collegiate Dictionary at 767 and 684 (1979). Similarly, a "newsmagazine" is defined as "a usu. weekly magazine devoted chiefly to summarizing and analyzing news." *Id.* at 767.

Therefore, under the test provided by the Kentucky Supreme Court, the statute must fall as special legislation prohibited by § 59 of the Kentucky Constitution.

It is only with great reluctance that this court declares unconstitutional under the state constitution portions of a statute which has been on the books for many years. Nevertheless, it is left with no alternative when applying applicable precedent from the Kentucky Supreme Court to KRS 411.051.

### CONCLUSION

Therefore, the court being advised, it is hereby ordered that plaintiff's motion for relief from partial summary judgment (doc. # 101) is granted. Recovery of punitive damages, if otherwise appropriate, shall not be barred herein because of plaintiff's failure to demand a retraction.